### MAURICE REYNOLDS *v.* CHRYSLER FIRST COMMERCIAL CORPORATION
### (14278)

O'Connell, Foti and Healey, Js.

Argued December 1, 1995—decision released March 26, 1996

*Markus L. Penzel,* for the appellant (plaintiff).

*Jacqueline D. Bucar,* for the appellee (defendant).

FOTI, J. The plaintiff, Maurice Reynolds, appeals from the judgment of the trial court granting the defendant's motion for summary judgment. The plaintiff claims that the trial court improperly concluded that evidence submitted by the plaintiff, including testimony regarding the nature of the defendant's discipline policy, did not raise a question of material fact as to either his status as an at-will employee or the existence of an implied contract. We affirm the trial court's judgment.

The following facts are relevant for purposes of this appeal. The defendant employed the plaintiff in various capacities from November, 1969, to May 30, 1990. From October 4, 1989, through May 14, 1990, the plaintiff served as a dealer representative. He was subsequently promoted to the position of regional manager-vice president. A dealer representative performs on-site merchandise inspections at dealerships according to procedures prescribed by the defendant.

Pursuant to the defendant's agreements with dealers, dealers are obligated to pay the defendant when they sell merchandise. The defendant prescribes inventory inspection procedures to ensure that dealers meet their financial obligations with the defendant and to protect creditors from potential fraud by dealers. The procedures, designed to ensure accurate representations of the status of the inventory, require dealer representatives personally to inspect the serial number on each piece of merchandise and to match that number with the corresponding number on the inventory list. The defendant's inventory list reflecting this procedure requires dealer representatives to sign to attest that they have complied with the procedures.

On October 5, 1989, in his capacity as a dealer representative, the plaintiff conducted an inventory inspec-

tion of the Sherlock Music Company and signed the affidavit of inspection at the bottom of the inventory list. The defendant alleges that, in violation of the procedures, the plaintiff, while performing the inspection, did not personally inspect the serial numbers of the merchandise in Sherlock's inventory. The defendant maintains that the plaintiff allowed the dealer to read the serial numbers from cards placed on the merchandise as he looked only at the serial numbers on the inventory list.[1] The defendant discovered the alleged infraction in May, 1990, and on May 30, 1990, terminated the plaintiff's employment for not complying with its inventory policies and procedures.

On October 1, 1991, the plaintiff filed suit against the defendant claiming that the defendant had improperly terminated his employment. In the complaint, the plaintiff alleged that the defendant violated an implied employment contract with the plaintiff by "failing and refusing to follow its progressive discipline policy and by failing to conform to its own standards of due process and fairness." Following discovery, the defendant filed a motion for summary judgment and an accompanying memorandum of law. The defendant's motion argued that the plaintiff was an employee at will and could be terminated at any time. The trial court, in a written memorandum of decision dated November 28, 1994, concluded that "[t]he evidence submitted by Reynolds does not raise a question of material fact regarding Reynolds' status as an at-will employee" and granted the defendant's motion for summary judgment. The plaintiff filed this appeal.

As a preliminary matter, we note that the plaintiff, in one of his initial memorandums to the trial court,

---

[1] The defendant claims that the plaintiff's failure to adhere to the defendant's inventory procedures allowed Sherlock to misrepresent the status of its inventory and to avoid repayment, resulting in a significant loss to the defendant.

acknowledged that the defendant's personnel manual did not create an employment contract, that the manual included a specific disclaimer to that effect, and that he had not relied on the manual during his employment with the defendant. During oral argument before the trial court, the plaintiff reiterated that he was not relying on the defendant's employee manual to support his claim. In his appellate brief, the defendant, in conformity with his earlier arguments, maintains that the defendant's practices concerning discipline and termination, rather than the defendant's employee manual, gave rise to an implied contract. We agree, therefore, with the trial court that the content of the defendant's employee manual "is of no relevance in considering the motion for summary judgment. The only issue is whether there is an implied contract created by the words or conduct of the defendant which gives rise to certain rights on the part of the plaintiff before he could be disciplined or terminated."

The dispositive issue here is whether the court properly determined that judgment for the defendant was required as a matter of law because the plaintiff failed to raise a material issue of fact regarding his status as an at-will employee or the existence of an implied contract of employment.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evi-

dence disclosing the existence of such an issue. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates*, 219 Conn. 772, 780–81, 595 A.2d 334 (1991); see also *Lees* v. *Middlesex Ins. Co.*, 219 Conn. 644, 650, 594 A.2d 952 (1991); *Wadia Enterprises, Inc.* v. *Hirschfeld*, 27 Conn App. 162, 165–66, 604 A.2d 1339, aff'd, 224 Conn. 240, 618 A.2d 506 (1992); *Trotta* v. *Branford*, 26 Conn. App. 407, 409–10, 601 A.2d 1036 (1992).

A material fact is a fact that will make a difference in the outcome of the case. *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990). "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Citations omitted; internal quotation marks omitted.) Id., 578–79.

In order to prevail on his claim, the plaintiff must demonstrate an actual agreement by the defendant to

have an employment contract with him. "A contract implied in fact, like an express contract, depends on actual agreement. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 211 n.2, 520 A.2d 217 (1987); *Therrien* v. *Safeguard Mfg. Co.,* 180 Conn. 91, 94, 429 A.2d 808 (1980); *Brighenti* v. *New Britain Shirt Corporation,* 167 Conn. 403, 406, 356 A.2d 181 (1974); *Corriveau* v. *Jenkins Bros.,* 144 Conn. 383, 387, 132 A.2d 67 (1957)." (Internal quotation marks omitted.) *Coelho* v. *Posi-Seal International, Inc.,* 208 Conn. 106, 111–12, 544 A.2d 170 (1988). Accordingly, to prevail on his wrongful termination claim, "which alleged the existence of an implied agreement between the parties, the plaintiff had the burden of proving by a fair preponderance of the evidence that [the defendant] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause [following progressive disciplinary measures]. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 212 n.2; *Therrien* v. *Safeguard Mfg. Co.,* supra, 94–95." (Internal quotation marks omitted.) *Coelho* v. *Posi-Seal International, Inc.,* supra, 112. To survive a motion for summary judgment, the plaintiff had the burden of presenting evidence that the defendant had agreed to some form of contract commitment.

"A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." *Christensen* v. *Bic Corp.,* 18 Conn. App. 451, 458, 558 A.2d 273 (1989). "The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind [the defendant] without some evidence that it intended to be bound to such a contract. See *Brighenti* v. *New Britain Shirt Corporation,* [supra, 167 Conn. 407]." Id., 458.

The plaintiff argues that the defendant's continuous, routine and ordinary use of its progressive disciplinary

measures with its employees gave rise to an implied contract. The plaintiff maintains that the defendant routinely and customarily utilized the same progressive disciplinary measures with its employees, and, therefore, the plaintiff acquired an implied understanding and reliance that he would not be terminated until all of the defendant's progressive disciplinary measures had been used with respect to him, if and when a problem ever arose with regard to his work performance. The plaintiff claims that the understanding of and reliance on disciplinary policy that he acquired from the defendant was exactly that which the defendant intended to impart to its employees. Hence, argues the plaintiff, there was a meeting of the minds between the plaintiff and the defendant that gave rise to an implied employment contract.

The plaintiff argues that the intent of the parties is a question of fact to be determined by the jury. He further asserts that because the intent of the parties in this case is central and vital to the determination of whether an implied employment contract existed between the parties, summary judgment was particularly inappropriate, and the determination of facts should have been presented to a jury whose duty it is to resolve factual disputes.

We recognize that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated." *Meiri* v. *Dacon*, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829, 106 S. Ct. 91, 88 L. Ed. 2d 74 (1985). "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to [employment termination] cases than to commercial or other areas of litigation." Id. Our Supreme Court has

held "that even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." *Wadia Enterprises, Inc.* v. *Hirschfeld, supra,* 224 Conn. 250.

In this case, the plaintiff has provided no evidence that would permit a trier of fact to draw a reasonable inference that an implied employment contract existed between the plaintiff and the defendant. In his deposition, the plaintiff testified that he "felt" and "thought" that he would "be out of a job" only if drastic changes occurred to Chrysler itself. The plaintiff's belief that he had an employment contract with the defendant, without more, is insufficient to sustain an implied contract claim. See *Christensen* v. *Bic Corp., supra,* 18 Conn. App. 458. Moreover, the plaintiff failed to supply evidence of a single oral representation made directly to him by the defendant that would give rise to an implied employment contract. The plaintiff conceded that the defendant had never told him, nor had he ever read anywhere, that he had an employment contract with the defendant. Given these admissions by the plaintiff, it is difficult, if not impossible, to find a meeting of the minds between the plaintiff and the defendant regarding the existence of an employment contract.

The plaintiff claims that it is the defendant's progressive disciplinary measures that gave rise to the implied employment contract. To substantiate his claim, the plaintiff relies heavily on testimony by the defendant's human resource personnel that they did not randomly disregard the defendant's progressive disciplinary measures or its termination guidelines. The plaintiff, however, fails to recognize that it is his burden to establish that adherence to these policies and procedures was the result of a contractual commitment by the defendant. "[C]ontracts are not created by evidence of customs and usage." *Christensen* v. *Bic Corp., supra,* 18 Conn.

App. 456; see *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 38, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). In addition, the defendant's disciplinary policies are documented in its employee manual, a manual the plaintiff has explicitly rejected as a basis for his claim. The plaintiff cannot conveniently transform these written policies into oral representations by the defendant that the plaintiff is other than an at-will employee. As the trial court correctly held: "The vague references to the company's policies in the deposition transcript of the [defendant's] human resources employees are also insufficient to show that Reynolds' employment was anything other than at will."

The plaintiff presented no evidence, other than his feelings and beliefs, that the defendant had impliedly contracted to implement its progressive disciplinary measures with the plaintiff in every situation where the plaintiff allegedly performed his job inadequately. Since the plaintiff has failed to present the necessary factual predicate to raise a genuine issue as to the existence of an implied employment contract, we conclude that the trial court properly granted the defendant's motion for summary judgment as to the plaintiff's claim of wrongful termination.

The judgment is affirmed.

In this opinion the other judges concurred.