[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FORSUMMARY JUDGMENT (#199) OF DEFENDANTLATICRETE INTERNATIONAL, INC.
The defendant Laticrete International, Inc. (Laticrete) claims that there is no genuine issue as to any material fact, and moves for summary judgment on the plaintiff's third party beneficiary claim (eighth count) on the grounds that it is legally insufficient and preempted by the Connecticut Product Liability Act, General Statutes §§ 52-572m et. seq. and on the plaintiff's product liability claim (thirteenth count) on the ground that it is barred by the applicable statute of limitations, General Statutes § 52-577a.
For the reasons below stated, the motion is granted on the plaintiff's third party beneficiary claim and denied on its product liability claim.
I. Factual and Procedural History
CT Page 12777
In 1987, the plaintiff, Culbro Land Resources ("Culbro"), arranged for the construction of two office buildings on land it owned in Bloomfield, Connecticut. Culbro entered into written agreements with the defendant, Casle Corporation ("Casle"), whereby Casle agreed to act as Culbro's architect and construction manager of the project. Materials manufactured by Laticrete were used in the construction of the exterior wall system. Although Culbro itself never entered into an express or implied contract with Laticrete, it alleges that Laticrete had a contractual relationship with Casle.
In June and July of 1988, the project's walls began to bow, causing the exterior tile work to crack. In May, 1992, Culbro learned of cracks in the wall system and determined that the wall systems were defective. Culbro commenced an action against Casle, Laticrete and several other defendants involved in the construction of the wall system by a twelve count complaint returnable January 11, 1994.[1] The defendant Laticrete now moves for summary judgment as to the plaintiff's third party beneficiary claim in count eight of the revised complaint and the plaintiff's product liability claim in count thirteen. Each side filed a memorandum of law in support of its position, and oral argument was heard.
II. Standard for Summary Judgment
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Great Country Bank v.Pastore, 241 Conn. 423, 435, (1997) (citing Practice Book § 384). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving Party." Id.
Summary judgment may properly be sought to contest legal sufficiency where the pleadings are closed. Boucher Agency, Inc.v. Zimmer, 160 Conn. 404, 409 (1971). "The issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." Pion v.Southern New England Telephone Co., 44 Conn. App. 657, 660
(1997). But, see Burke v. Avitabile, 32 Conn. App. 765, 772, cert. denied 228 Conn. 908 (1993). CT Page 12778
III. Discussion
A. Third Party Beneficiary Claim (Eighth Count)
In count eight, Culbro alleges that it was a third party beneficiary of a contract between Laticrete and Casle and that the contract was breached by Laticrete. A third party beneficiary is "[o]ne for whose benefit a promise is made in a contract but who is not a party to the contract." Black's Law Dictionary (6th Ed. 1990). "A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract." Gateway v. DiNoia, 232 Conn. 223, 230, (1995). Moreover, "[c]ontracts for the benefit of a third party are enforceable without any requirement that the promisor's performance be rendered directly to the intended beneficiary."Stowe v. Smith, 184 Conn. 194, 196, (1981). The rights of a third party beneficiary are, however, "created by contract, and in the absence of a contract there is no such right." 2 Restatement (Second), Contracts § 309, comment a (1981).
In Stowe v. Smith, supra, 184 Conn. 196, the court held that "a third party seeking to enforce a contract must allege and prove that the contracting parties intended that the promisor should assume a direct obligation to the third party." See alsoGateway v. DiNoia, 232 Conn. 223, 231 (1995) (holding that "[t]he proper test to determine whether a lease creates a third party beneficiary relationship is whether the parties to the lease intended to create a direct obligation from one party to the lease to the third party.")
The term "direct obligation" implies a right of the beneficiary to enforce the contract. "[T]he inquiry must focus on the intention expressed in the [contract] and not on what intentions existed in the minds of the parties." (Internal quotation marks omitted) Gateway v. DiNoia, Supra, 232 Conn. 231.
"Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, when the language is clear and unambiguous it becomes a question of law for the court." Id., 232.
In Grigerik v. Sharpe, 45 Conn. App. 775, 783, cert. granted,243 Conn. 918 (1997), the court recognized that the test applied by Connecticut courts refers to the intent of the parties that CT Page 12779 the promisor should assume a direct obligation to the third party beneficiary. (emphasis added). The Appellate Court, however, held that "mutual intent of the promisor and promisee is no longer necessary for [such] a beneficiary to have a right to enforce the contract." Id., 787. Thus, the Appellate Court appears to have held that it is the intent of the promisee to give the beneficiary the benefit of the promised performance that controls. The vitality of this holding is in doubt, however, in light of the granting of certification limited to the question of whether the Appellate Court properly held "that only the intent of the promisee, and not the intent of both contracting parties, is dispositive of the rights of an alleged third party beneficiary of a contract." Grigerik v. Sharpe, 243 Conn. 918
(1997).
Moreover, only two years ago our Supreme Court held inGateway v. DiNoia, supra, 232 Conn. 231, that it is the intent of both contracting parties that controls.
"The intent to confer a benefit is irrelevant to the determination of whether Gateway was a third party beneficiary. [The court] must instead evaluate whether Grant [the promisee] and DiNoia [the promisor,] intended that DiNoia assume a direct obligation to Gateway." Id.
The second Restatement of Contracts follows a somewhat different approach. It classifies third party beneficiaries into two categories: `intended beneficiaries', who have a right to enforce a contract made by others, and `incidental beneficiaries' who have no such right, 2 Restatement (Second) Contracts § 302 (1981).
"Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognization of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. 2 Restatement (second) supra, § 302.
In further differentiating intended and incidental beneficiaries, the Restatement explains that "[p]erformance of a contract will often benefit a third person. But unless the third CT Page 12780 person is an intended beneficiary as here defined, no duty to him is created." Id, comment (e). Comment (e) provides an example substantially similar to the scenario in this case. "A contracts to erect a building for C. B then contracts with A to supply lumber needed for the building. C is an incidental beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the building." Id, comment (e), illustration 19.
I recognize that "[s]ummary judgment procedure is particularly inappropriate where the inferences the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions," (Internal quotation marks omitted) Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 111
(1994). See also Picataggio v. Romeo, 36 Conn. App. 791, 794 (1995).
In the present case the plaintiff has provided no evidence whatsoever that Laticrete entered into an express contract with Casle. Culbro, however, alleges that an implied contract existed between Laticrete and Casle. "An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and the conduct of the parties." Brighentiv. New Britain Shirt Corporation, 167 Conn. 403, 406,356 A.2d 181 (1974). "Connecticut does recognize implied contracts as long as the essential elements of a contract are met." Main v. Roth, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 458686 (May 16, 1995, Handy, J. ). "Thus, in order to set forth a claim for breach of an implied contract, a plaintiff must allege that the defendant `agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment' to the plaintiff." (Brackets in original; internal quotation marks omitted.) Redding v. Liberty Bank, Superior Court, judicial district of New London at New London, Docket No. 531691 (May 22, 1995, Hendel, J.), quoting Coelho v. Posi-SealInternational Inc., 208 Conn. 106, 112, 544 A.2d 170 (1988).
The only evidence that Culbro has presented to support its claim of an implied contract between Laticrete and Casle is that representatives of Laticrete were present at the job site, that they provided ongoing advice with respect to the project, that they provided services and materials and that they allegedly made express and implied representations and warranties with respect to the services and material provided. Culbro concludes, therefore, that because the project was owned by Culbro, Laticrete intended to owe a direct obligation to Culbro by providing such services and materials. CT Page 12781
This evidence is insufficient, as a matter of law, to support an implied contract between Casle and Laticrete. There is nothing in the case to take the relationship among the parties out of the chain often created in the construction of a building, that is: owner — general contractor and/or subcontractors — distributors — material suppliers.
Materials manufactured by Laticrete were supplied by a distributor to the subcontractors for use in the project. Laticrete provided services in connection with its product by offering advice and making recommendations about the use of its product. Culbro has provided no evidence, however, of any consideration or other contractual commitment between Laticrete and Casle and therefore, an implied contract has not been established.
Even if there was an implied agreement between Laticrete and Casle, which is doubtful, the plaintiff has failed to present sufficient evidence establishing a genuine issue of material fact as to whether Laticrete and Casle both intended that Laticrete assume a direct obligation to Culbro.
The Appellate Court has held that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. . . ." Reynolds v. Chrysler FirstCommercial Corp. , 40 Conn. App. 725, 731, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996). "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." (Internal quotation marks omitted.) Id. Therefore, "even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." Wadia Enterprises, Inc. v. Hirschfeld,224 Conn. 240, 250, 618 A.2d 506 (1992).
Culbro argues that Laticrete provided services and materials to the project and that Culbro, as owner, was a beneficiary of those services. Culbro fails to provide any evidence, however, that Laticrete intended to owe a direct obligation to Culbro. The mere fact that Culbro benefited from Laticrete's services is insufficient, without more, to support a claim for a breach of a third party beneficiary contract under the circumstances of this case. CT Page 12782
Accordingly, I conclude that Culbro's third party beneficiary claim fails and that Laticrete is entitled to judgment as a matter of law, and its motion for summary judgment as to court eight of the revised complaint must be granted.
B. Product Liability Claim (Thirteenth Count)
In count thirteen of the revised complaint, the plaintiff alleges a product liability claim. Laticrete argues in support of its motion for summary judgment that Culbro's claim is barred by the three year statute of limitations, General Statutes Section52-577a.[2] Laticrete claims that the present action was not brought within three years of when Culbro knew or should have known of the defective wall system. The facts are vigorously disputed as to When Culbro can be charged with knowledge of the defective wall system. Laticrete claims that Culbro became aware of the construction defects in 1988, because Casle was aware of such defects, that Casle was Culbro's agent for that purpose, and that such knowledge is imputed to Culbro. Culbro counters that as the wall system continued to be functional it did not have knowledge of the true nature of the defects until 1992 when the wall system began to fail, and in any event, that Casle was not Culbro's agent for the purpose of notice of defects in the construction and the resultant damages.
The issue of whether Casle was Culbro's agent for the purpose of notice of construction defects is a question of fact.Beckenstein v. Potter Carrier, Inc., 191 Conn. 120, 133 (1983). The evidence submitted by Laticrete does not sufficiently demonstrate that Casle, as a matter of law, was Culbro's agent for the purpose of notice of construction defects.
Moreover, our Supreme Court has held that a plaintiff must have discovered or in the exercise of reasonable care should have discovered the essential elements of a possible cause of action before the statute of limitations commences to run.
"A cause of action will not accrue until the plaintiff discovers or in the exercise of reasonable diligence should have discovered not only that he has been injured but also that his injury may have been caused by the defendant's wrongful conduct. We hold that the statute of limitations begins to run when the claimant has knowledge of the facts which would put a reasonable person on notice of the nature and extent of an injury and that CT Page 12783 the injury was caused by the wrongful conduct of another." (Citation omitted; emphasis added; internal quotation marks omitted). Catz v. Rubenstein, 201 Conn. 39, 49 (1986).
Laticrete has not met its burden of establishing the nonexistence of a genuine issue of material fact as to when Culbro knew or should have known of the defective wall system and `discovered its injury' or that Casle was Culbro's agent for the purpose of notice of the defect and injury. Therefore, summary judgment is inappropriate, and Laticrete's motion must be denied, and the resolution of those questions must be left to the trier of facts.
IV. Conclusion
For the reasons stated Latricrete's motion for summary judgment is granted as to the eighth count of Culbro's revised complaint and denied as to the thirteenth count thereof.
Teller, J.