[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENTBY DEFENDANT ROYAL INDEMNITY CO. (#120)
This is an action for negligence and breach of contract arising out of the purchase of liability and uninsured motorist insurance coverage by the plaintiff from the defendant, Royal Indemnity Co. (Royal), under the Connecticut Automobile Insurance Assigned Risk Plan (CAIARP).[1] The plaintiff basically claims that the insurance agent who provided the insurance was Royal's agent and that said agent, and Royal directly, failed to provide her with uninsured motorist coverage limits equal to the liability coverage of her policy. Royal moves for summary judgment claiming that there is no genuine issue of material fact and that the plaintiff effectively selected lower uninsured motorist coverage. For the reasons stated below, Royal's motion for summary judgment is granted.
I. PROCEDURAL HISTORY
The plaintiff, Beverly Welch, claiming uninsured motorist coverage of $50,000 equal to her liability coverage of $50,000, initiated a lawsuit against the defendant Royal on August 22, 1994.[2] The plaintiff and Royal executed a limited release, in which the plaintiff released Royal for claims arising under her policy to the extent of $20,000 of uninsured motorist benefits but reserved claims for sums in excess of $20,000. The plaintiff filed an amended eight count complaint on February 5, 1996 with only counts one and two directed against Royal. In count one, the plaintiff claims that Royal has breached its contract of insurance by refusing to pay the excess over $20,000 on her uninsured motorist claims. In count two, the plaintiff alleges that Royal is liable for the acts and omissions of its agent, Stephen Jacoby. The plaintiff further alleges that Royal negligently "failed to raise the insured's policy limit," and "failed to inform the plaintiff of its not raising the uninsured coverage to the requested limits."
Presently before the court is Royal's motion for summary judgment on counts one and two. In its supporting memorandum, Royal contends that, as a matter of law, the plaintiff is not CT Page 2777 entitled to receive additional uninsured motorist benefits. According to Royal, its only duty was to provide the coverage requested, because the plaintiff's "application requesting minimum uninsured motorist benefits [$20,000/40,000], was properly initialed and signed by the plaintiff."
The plaintiff filed memoranda in opposition to Royal's motion for summary judgment. In her first memorandum, the plaintiff contends that Royal failed to inform her that "she was entitled to uninsured motorist coverage equal to her liability coverage of $50,000 at no extra charge in premium." Subsequently, supplemental briefs asserting similar arguments were submitted by both parties, and oral argument was held.
II. FACTUAL HISTORY
Many of the material facts of this case are not in dispute. On October 9, 1993, the plaintiff was operating her vehicle when it was struck in the rear by an unidentified vehicle. As a result of the collision, the plaintiff sustained personal injuries. At the time of the accident, the plaintiff's vehicle was insured by Royal with a policy which provided liability coverage limits of $50,000/100,000, and uninsured motorist coverage limits of $20,000/40,000.
During 1991, the plaintiff, in need of coverage, went to an automobile insurance agent, Stephen Jacoby. Jacoby prepared an insurance quote providing liability coverage limits of $50,000/100,000, and uninsured motorist coverage limits of $20,000/40,000. Shortly thereafter, the plaintiff met with Jacoby and signed an application based on the quotation. The plaintiff "initialed the UM reduction authorization on the space at the end of the proper line [,]" and signed and dated the form. (Affidavit of Stephen Jacoby; see also Affidavit of Beverly Welch ¶ 7, Defendant's Exhibit J.)
The application was then submitted to CAIARP and assigned by it to Royal. In accordance with the application, Royal issued an assigned risk policy, providing liability coverage limits of $50,000/100,000 and uninsured motorist coverage limits of $20,000/40,000 for the year beginning on December 16, 1991, and forwarded to the plaintiff a copy of the declarations page. (Affidavit of Lucy Armitage ¶ 7, Defendant's Exhibit L.) Later, the plaintiff twice renewed her policy for the same coverage limits for the years beginning December 16, 1992 (before CT Page 2778 the accident claimed upon) and December 16, 1993, (after the accident claimed upon).
III. STANDARD FOR SUMMARY JUDGMENT
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." (Citations omitted.) Wilson v. New Haven,213 Conn. 277, 279, 567 A.2d 829 (1989). "[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Citations omitted; internal quotation marks omitted.) Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 105-06, 639 A.2d 507
(1994).
IV. DISCUSSION
 A. Agency of Jacoby
In her affidavit, the plaintiff alleges that she wanted "`uninsured motorist coverage equal to the bodily injury limits checked above' and that is what I thought I was getting and is exactly what I wanted." (Affidavit of Beverly Welch ¶ 13.) She further alleges that she relied on Jacoby who filled out the forms, and instructed her where to sign and initial them. Id., ¶¶ 7 and 9.
A threshold issue in the case is whether Royal can be held vicariously liable for the acts of Jacoby under general principles of agency law. Although no Connecticut cases were CT Page 2779 found, "a majority of the authorities and texts which have considered the question hold that in the absence of statutory authority or some special indicia of authority the assigned risk
broker is the agent of the insured and not of the insurer." (Emphasis added.) Employers Casualty Co. v. Mireles,520 S.W.2d 516, 520-21 (Tex.App. 1975) (citing cases and treatises). See also McKillip v. Employers Fire Insurance Co., 932 S.W.2d 268,270 (Tex.App. 1996). The plaintiff points to no evidence in the record that Jacoby was an agent of Royal; nor does she point to any evidence that Royal impliedly or expressly held Jacoby out as it agent.
Moreover, the insurance application itself provided in relevant part: "APPLICANT'S STATEMENT: IMPORTANT — READBEFORE SIGNING (Emphasis in original.)
I declare and certify that: . . . (7) I designate as producer of record for this insurance [Jacoby] . . . and I understand heis not acting as an agent of any Company for the purpose of thisinsurance."(Emphasis added.)
The application further provided: "NOTICE OF ADVERSEUNDERWRITING DECISION: IMPORTANT — READ BEFORESIGNING: . . . WHAT ARE YOUR RIGHTS? (Emphasis in original.) You have the right to know the specific reasons why your agent orbroker (Emphasis added.) is offering you this coverage, but you must ask for them.
 I request to know in writing the reasons why I am being offered insurance through the Plan.
 I do not request the reasons."
The application was signed and dated by the plaintiff, and contained a check mark in the box which stated: "I do not request the reasons." The insurance application was on a form approved by the state insurance commissioner.
From the foregoing, I find that the plaintiff has not shown that Jacoby was acting as an agent of Royal in this transaction, and that there is no genuine issue of material fact as to this issue. Accordingly, I therefore conclude that Royal's liability may not arise from an agency relationship with Jacoby.
B. Effectiveness of Election of Lesser Limits
CT Page 2780
The policy which is the subject of the disputed claim initially covered the year beginning December 16, 1991, and was renewed without coverage changes for the periods beginning December 16, 1992 and December 16, 1993. "There is no dispute that parties contract with reference to existing law, except when the contract discloses a contrary intention. Unless the agreement indicates otherwise, a statute existing at the time an agreement is executed becomes a part of it and must be read into it just as if an express provision to that effect were inserted therein." (Citations omitted.) Hatcho Corp. v. Della Pietra, 195 Conn. 18,21, 485 A.2d 1285 (1985).
On October 9, 1993, General Statutes (Rev. to 1983) § 38-175c (a)[3] (now General Statutes § 38a-336) required every automobile liability insurance policy "issued or renewed on or after July 1, 1984" to have uninsured motorist coverage equal to the liability coverage of the policy "unless the insured requests in writing a lesser amount." The statute further provided that: "Such written request shall apply to all subsequent renewals of coverage . . . unless changed in writing by the insured. Id.[4]
In Harlach v. Metropolitan Property Liability Ins. Co.,221 Conn. 185, 190, 602 A.2d 1007 (1992), our Supreme Court held: "The contractual nature of insurance and the commercial relationship between insurer and insured are not altered by any peculiarities of uninsured motorist coverage. The relationship between the insured and the insurer clearly is contractual in nature, and we find nothing in [the uninsured motorist statute] that alters the traditionally commercial setting in which insurance policies are purchased. Our [uninsured motorist] statute creates no fiduciary obligations . . . . As offeror, [the carrier] had no contractual duty voluntarily to explain the terms of its offer or the advantages and disadvantages to procuring uninsured motorist coverage. . . . All that is required . . . for an effective rejection is a writing signed by the named insured.' (Emphasis in original.) Silver v. Slusher, 770 P.2d 878, 883
(Okla. 1988), cert. denied, 493 U.S. 817, 110 S.Ct. 70,107 L.Ed.2d 37 (1989)." Harlach v. Metropolitan Property LiabilityIns. Co., supra, 221 Conn. 190.
"In [Harlach], the court reviewed § 38a-336 (a)(2). The court found that the plaintiff effectively elected lower UM coverage when he initialed a form sent to him by the defendant, CT Page 2781 thereby indicating a preference for the minimum coverage option, signed his name, dated the form and mailed it to the defendant. The court rejected the plaintiff's claim that he did not fully understand the insurance coverage he was declining because the notice [sent by the insurance company] made it very clear that increased amounts of coverage were available at a higher premium and that an election to accept less would reduce both the amount of coverage and the policy premium.' Id., 193." Franz v. UnitedStates Fleet Leasing Inc., Superior Court, judicial district of New London at New London, Docket No. 532035 (March 5, 1997, Hendel J.)[5] In the present case, the assigned risk application executed by the plaintiff provided in pertinent part: "Uninsured Motorists (Uninsured Motorists Limits equal to Bodily Injury Limits checked above.) I request Uninsured MotoristsLimits less than Bodily Injury Limits, as checked below. . . ."
(Emphasis in original.) The form also provided a choice of uninsured motorist coverages ranging from $20,000/40,000 to $100,000/300,000. To obtain lesser limits of uninsured motorist coverage, the provision required an applicant to check a box and to place her initials on the dotted line immediately following the words "checked below." Thus, the application here, as inHarlach, "made it very clear that increased amounts of coverage were available . . . and that an election to accept less would reduce . . . the amount of coverage. . . ." Harlach v.Metropolitan Property Liability Ins. Co., supra, 221 Conn. 193.
The completed application submitted to Royal had a check mark in the box selecting the minimum uninsured motorist coverage option, $20,000/40,000. It was signed and dated by the plaintiff, and contained her initials in the space indicating her choice of the lowest amount of uninsured motorist coverage.[6] The completed application exhibited a clear and unambiguous intent to purchase uninsured motorist coverage with limits of $20,000, an amount lower than the policy's liability coverage limits. Significantly, the application submitted by the plaintiff constituted an offer to purchase insurance which ripened into a contract when it was accepted by Royal. Swentusky v. PrudentialInsurance Co., 116 Conn. 526, 534, 164 A. 686 (1933).
"Reformation is appropriate in cases of mutual mistake that is where, in reducing to writing an agreement made or transaction entered into as intended by the parties thereto, through mistake, common to both parties, the written instrument fails to express the real agreement or transaction. . . . [R]eformation is also available in equity when the instrument does not express the true CT Page 2782 intent of the parties owing to mistake of one party coupled with fraud, actual or constructive, or inequitable conduct on the part of the other." Harlach v. Metropolitan Property Liability Ins.Co., supra, 221 Conn. 190.
Here, the plaintiff points to no evidence in the record of a mutual mistake which would entitle her to reformation. In accordance with the express terms of the submitted application, Royal issued an assigned risk policy, with an effective date of December 16, 1991, providing liability coverage limits of $50,000/100,000 and uninsured motorist coverage limits of $20,000/40,000. (Affidavit of Lucy Armitage Paragraph 5, Defendant's Exhibit L.) Thereafter, Royal forwarded to the plaintiff a copy of the declarations page upon issuance and each time the policy was renewed. Id., Paragraph 7. The declaration page forwarded upon issuance sets forth the following: "Bodily Injury Liability . . . 50,000 [per person] . . . 100,000 [each accident] . . . Uninsured Motorist Protection . . . 20,000 [per person] . . . 40,000 [each accident]." (Declarations Page, Defendant's Exhibit D.) The declarations pages forwarded for each of the following two years, the first and second renewals, set forth the same bodily injury and uninsured motorist coverage limits. (Defendant's Exhibit E.)
Additionally, the plaintiff failed to point to any evidence which may entitle her to reformation in the case of a unilateral mistake of one party, coupled with actual or constructive fraud, or negligent conduct on the part of the other party to the policy, Royal. Even if Jacoby's actions were fraudulent or negligent, that would not entitle the plaintiff to reformation of her contract with Royal. Because Jacoby has no agency relationship with Royal, Royal is not vicariously liable for his actions. Nor can his actions be imputed to Royal.
Furthermore, when Royal renewed the policy, it did not have a duty to issue uninsured motorist coverage in an amount equal to the policy's liability coverage. The plaintiff requested a lesser amount of uninsured motorist coverage on the initial application. Pursuant to the express language of General Statutes §38a-336 (a)(2), the plaintiff's initial request applied to all subsequent renewals of coverage, because she did not request a change in coverage limits.
V. CONCLUSION
CT Page 2783
The court recognizes that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. . . ." (Citations omitted; internal quotation marks omitted.) Reynolds v. Chrysler First Commercial Corp.,40 Conn. App. 725, 731, 673 A.2d 573, cert. denied, 237 Conn. 913,675 A.2d 885 (1996).
"The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." (Internal quotation marks omitted.) Id.
Even if the election to go with lesser limits is deemed to be a waiver, and therefore the election was required to have been made purposefully and knowingly to be effective, the plaintiff has not shown a factual predicate in order to raise a genuine issue of material fact as to this issue.
From the written record, it is evident that the plaintiff knew that she was selecting less coverage than that to which she may have been entitled. The application form itself showed the amounts of her coverage, and her ability to elect higher uninsured motorist coverages. The initial and subsequent declaration sheets also clearly showed the continuation in effect of the coverages previously selected by her.
These subordinate facts, as a matter of law, show that the plaintiff relinquished her right to the higher amount of uninsured-motorist coverage she may have been entitled to by requesting in writing a lesser amount. Accordingly, Royal is entitled to judgment as a matter of law, and its motion for summary judgment on counts one and two of the complaint is granted.
Teller, J.