[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
The defendant, United Technologies Corporation, moves to strike all five counts of plaintiff Mark Pasik's amended complaint on the ground the allegations are legally insufficient to support the claims asserted therein. For the reasons stated below, the motion is granted as to the first, second, third, and fourth counts and denied as to the fifth count.
The plaintiff, Mark Pasik, asserts five causes of action: breach of an implied contract of employment, constructive discharge, intentional infliction of emotional distress, negligent infliction of emotional distress, and defamation. Pasik claims as consequence of the defendant's actions that he has lost substantial income, job related benefits, and has suffered emotional distress, embarrassment, and humiliation. In the first count, he alleges that in May or June 1985, while he was working CT Page 10080 for McDonnell Aircraft in St. Louis, Missouri, agents of the defendant contacted him and discussed an employment position with the defendant. During the negotiations, the defendant's agents portrayed the defendant as a family company and told him that "as long as the plaintiff did his job, he would have a job with the defendant company for as long as he wanted." In August, 1985, the plaintiff was hired by the defendant as an engineer. The plaintiff asserts that "the defendant has breached an implied contract to discharge the plaintiff only for cause."
In the second count, the plaintiff asserts a claim for constructive discharge. This claim is based on the representations that were made about the defendant being a family company and statements in a handbook. At the time that the plaintiff began his employment with the defendant, he was given a UTC Code of Ethics Handbook. The handbook contains the following statements: "it is the responsibility of all UTC employees to comply with the Standards of Conduct and implement policies . . . no retribution will be taken against any employees for making such reports . . . no retribution will be taken against any employee for contacting the UTC Ombudsman, any level of supervision, or human resources representative to express concerns with business policies or practices . . . [defendant] is committed to provide its employees a work environment free from discrimination, harassment or personal behavior not conducive to a productive work climate."
In February, 1992, the plaintiff discovered errors in the way the defendant was processing data pertaining to the government's Comanche program. Another employee of the defendant, Gary DeSimone, told the plaintiff not to discuss the error with government representatives. When the plaintiff met with two government representatives on February 25 and 26, 1992, he was followed and watched by DeSimone. Representatives of the defendant also contacted government representatives and questioned them about the plaintiff. The plaintiff further alleges that, because he discovered and reported errors, the defendant's agents stripped him of his job responsibilities, released him from his daily duties, gave him meaningless tasks, isolated him from contact with government officials, and transferred him to a job writing engineering procedural manuals. These actions, according to the plaintiff, "made the working environment unbearable causing the plaintiff to leave on or about September 15, 1992 and the employment relationship ended."
In the third count, the plaintiff alleges that "in causing the plaintiff to leave employment with the defendant, the defendant acted with a specific intent to cause severe emotional distress to the plaintiff, or with a reckless disregard of the probability of causing such distress to the plaintiff." In the fourth count, the plaintiff alleges that defendant had a duty to act reasonably in carrying out the obligations of the CT Page 10081 employment agreement, that it failed to act reasonably, and that the defendant should have known that its failure to exercise due care would cause the plaintiff severe emotional distress. In the fifth count, the plaintiff alleges that "the defendant accused the government person of getting "dirt' on the `Commanche' from the plaintiff which was utterly false" and that "the plaintiff, in consequence of said allegations, was brought into contempt and ridicule and the plaintiff's reputation as a faithful and diligent employee was and has been damaged."
"The function of a motion to strike is to test the legal sufficiency of a pleading; it admits all facts well pleaded. . . . The role of the trial court [is] to examine the complaints, construed in favor of the plaintiffs, to determine whether the plaintiffs have stated a legally sufficient cause of action." Napoletano v. Cigna Healthcare ofConnecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127 (1996).
"A motion to strike admits all facts well pleaded; it does not admitlegal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original; internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 588, 693 A.2d 293
(1997). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged."Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215,618 A.2d 25 (1992). "If the facts provable under the allegations would support a defense or a cause of action, the motion to strike must be denied." RK Constructors, Inc. v. Fusco Corp., 231 Conn. 381, 384,650 A.2d 153 (1994).
In the first count, the plaintiff asserts that the defendant undertook a contractual commitment "to discharge the plaintiff only for cause." The only factual allegations pertinent to such an undertaking appear in paragraph seven: "The defendant . . . was portrayed [during the preemployment interview] as a family type company and the plaintiff was told that as long as the plaintiff did his job, he would have a job with the defendant company for as long as he wanted." These allegations are insufficient to show that the defendant agreed to undertake some form of contractual commitment under which the plaintiff could only be terminated for just cause. See Reynolds v. Chrysler First Commercial Corp.,40 Conn. App. 725, 730, 673 A.2d 573, cert. denied, 237 Conn. 913,675 A.2d 885 (1996); Firgeleski v. Hubbell, Inc., D.N. CV 98 035 32 87 (Jud. Dist. of Fairfield, Stevens, J.) (12/19/00).
The plaintiff, furthermore, has failed to allege in the first count that he was discharged by the defendant. In light of the allegations of the second count, wherein the plaintiff asserts that he was constructively discharged, this omission was not merely an oversight. The CT Page 10082 plaintiff has failed to allege that the defendant breached an implied agreement of employment. The defendant's motion to strike the first count must be granted.
In the second count, the plaintiff alleges that he was constructively discharged by the defendant. The plaintiff's constructive discharge claim, like the implied contract claim in first count, is premised on the theory that the defendant undertook a contractual commitment under which the plaintiff could only be terminated for just cause. The plaintiff has still failed to allege facts that show the defendant undertook such a commitment.
Even if it is assumed that the defendant undertook a contractual commitment to discharge the plaintiff only for just cause, the plaintiff's allegations are nevertheless insufficient to show a constructive discharge. His allegations do not establish the existence of an intolerable work atmosphere that would compel a reasonable person in that situation to resign. See Brittell v. Department of Correction,247 Conn. 148, 179, 717 A.2d 1254 (1998); Lombardo v. Oppenheimer,701 F. Sup. 29 (D.Conn. 1987). The defendant's motion to strike the second count must be granted.
In his third count, the plaintiff asserts a cause of action for intentional infliction of emotional distress. "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'. . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Applelton v. Board ofEducation, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000). The plaintiff has not alleged conduct on the part of the defendant that rises to the level of "extreme and outrageous" conduct contemplated by Connecticut case law. The defendant's motion to strike the third count must be granted.
In the fourth count, the plaintiff asserts a claim of negligent infliction of emotional distress. The defendant argues this count is legally insufficient because the plaintiff has not sufficiently alleged facts that show the defendant had knowledge that its conduct would cause the plaintiff emotional distress. In addition, the defendant argues that CT Page 10083 Connecticut does not recognize a cause of action for emotional distress in a continuing employment relationship.
Recently, in Perodeau v. Hartford, 259 Conn. 729, 762-63, 791 A.2d 552
(2002), the Connecticut Supreme Court held that an "[employer] may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment." Since the plaintiff does not allege that the conduct he complains about occurred during the termination process, the defendant's motion to strike the fourth count must be granted.
In the fifth count, the plaintiff asserts a claim for defamation. In its motion to strike, the defendant raises three grounds for striking this claim: the plaintiff does not allege that the defendant made a defamatory statement, the plaintiff does not allege that the defamatory statement was slander per se, and the plaintiff does not allege that he suffered special damage. In its memorandum in support of its motion to strike, the defendant adds the argument that the plaintiff does not allege that the defendant published the defamatory statement. This court will only consider the grounds raised in the motion to strike. SeeBlancato v. Feldspar Corp., 203 Conn. 34, 44, 522 A.2d 1235 (1987). The parties have sparingly briefed the defamation claim.
To prove that the defendant is liable for defamation, the plaintiff must show that the defendant published false statements that harmed the plaintiff and that the defendant was not privileged to do so. Torosyan v.Boehringer Ingelheim Pharmaceuticals, 234 Conn. 1, 27, 662 A.2d 89
(1995). The plaintiff has alleged the defendant's agent made defamatory statements. See Devito v. Schwartz, 66 Conn. App. 228, 234, 784 A.2d 376
(2001). The plaintiff must also allege that he suffered special damages. See Connecticut Law of Torts (3d Ed. 1991) § 147, 410. The plaintiff alleges that he suffered lost income and employment benefits and that he has been unable to find a job equal to the one he had with the defendant. These losses are special damages. The plaintiff has alleged facts to support the defamation claim.
The defendant's motion to strike the first, second, third and fourth counts is granted. The motion to strike the fifth count is denied.
 _______________ THIM, J.