WADIA ENTERPRISES, INC. *v.* CAROLYNE
HIRSCHFELD ET AL.
(14540)

PETERS, C. J., BORDEN, BERDON, KATZ and F. X. HENNESSY, Js.

Argued October 28—decision released December 22, 1992

*Robert A. Slavitt,* with whom was *Michael J. Lawrence,* for the appellant (plaintiff).

*Michael D. Bromley,* with whom, on the brief, was *Burt M. Hoffman,* for the appellees (defendants).

KATZ, J. The principal issue in this case is whether the plaintiff contractor produced sufficient evidence of the defendant homeowners' alleged bad faith so as to survive their motion for summary judgment under the Home Improvement Act (act), General Statutes § 20-418 et seq. The plaintiff appeals from the judgment of the Appellate Court affirming the decision of the trial court granting the defendants' motion for summary judgment. We affirm.

The plaintiff, Wadia Enterprises, Inc., brought an action to recover damages against the defendants, Carolyne Hirschfeld, also known as Caroline Hirschfeld, and Robert B. Machinist, under theories of breach of contract, quasi contract and foreclosure of a mechanic's lien. The defendants filed an answer and special defenses asserting, inter alia, that the contract violated General Statutes § 20-429 (a) (6) of the act and was therefore unenforceable.[1] The plaintiff subsequently amended its complaint to allege that the defendants had acted in bad faith by asserting the protection of the act after attempting to enforce their rights under the contract. The defendants filed a motion for summary judgment, alleging that, by failing to contain the required notice of the right of cancellation, the contract violated the act and was therefore unenforceable as a matter of law. In opposing the motion, the

---

[1] General Statutes § 20-429 provides in pertinent part: "REQUIRED CONTRACT PROVISIONS; ENFORCEABILITY. NEGATIVE OPTION PROVISIONS PROHIBITED. OWNER TO RECEIVE COPY. CONTRACTS CONSIDERED HOME SOLICITATION SALES. (a) No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor."

plaintiff claimed that the defendants had acted in bad faith and thus could not seek the protection of the act. The trial court granted the defendants' motion for summary judgment and the Appellate Court affirmed; *Wadia Enterprises, Inc.* v. *Hirschfeld,* 27 Conn. App. 162, 604 A.2d 1339 (1992); concluding that the plaintiff had failed to present a sufficient factual basis to raise a genuine issue of bad faith on the part of the defendants. We affirm the judgment of the Appellate Court.

The opinion of the Appellate Court discloses the following facts. On August 21, 1989, the parties entered into a detailed, written contract for the renovation of and addition to the defendants' house in Greenwich. The defendants' architect and New York attorneys prepared the contract before presenting it to the plaintiff for execution. The contract provided that a total contract price of $599,314.80 would be payable in ten installments and that the defendants could retain five percent of each installment payment until the architect's certification of the completion of the job. The contract further provided for substantial completion of the project 170 week days after the building permit was obtained, a liquidated damages clause of $500 per day for failure to complete the project within the time provided in the contract, supervision of the project by the defendants' architect, and for additional work to be performed at the request of the defendants by means of "change orders." The contract was a home improvement contract within the meaning of the act. The contract did not, however, provide the notice of the right of cancellation required by § 20-429 (a) (6) of the act. Id., 164.[2]

The plaintiff subsequently worked on the defendants' house pursuant to the contract and to additional change

---

[2] See footnote 1, supra.

orders for an added expense of approximately $150,000 to $200,000. Between September 14, 1989, and September 5, 1990, the defendants' architect approved and the defendants paid the first nine requisitions for payment, minus the five percent retainage pursuant to the contract. On August 30, 1990, the architect approved and certified for payment the tenth and final requisition in the amount of $64,000. Of this amount, $35,676 was attributable to amounts that the defendants had retained pursuant to the five percent retainage clause. The defendants refused to pay the final installment. Instead, the defendants asserted that sums due under the contract's $500 per day liquidated damages clause should be set off against the plaintiff's final requisition for payment. Id.

On September 9, 1990, the plaintiff filed a mechanic's lien on the Greenwich land records, and subsequently commenced this action to foreclose that lien, and to recover damages for breach of contract and quasi contract. In their answer and special defenses, the defendants denied the existence of an outstanding balance in favor of the plaintiff, and alleged, inter alia, that the contract failed to contain the notice of the right of cancellation as required by § 20-429 (a) (6), and therefore was invalid and unenforceable against the defendants.[3] The plaintiff subsequently amended its complaint, alleging that the defendants' refusal to make final payment constituted a bad faith use of the act. The defendants filed an answer and special defenses to the amended complaint, substantially reiterating their prior answer

[3] The defendants also alleged the following: (1) the contract violated the Home Solicitation Sales Act, General Statutes § 42-134a et seq.; (2) the plaintiff failed to perform all of its obligations under the contract, and has performed certain obligations in a defective manner; (3) the plaintiff abandoned its contractual obligations; and (4) the quantum meruit count of the complaint fails because the existence of an express contract defeats an action of quantum meruit.

and special defenses.[4] The plaintiff filed a reply denying all of the defendants' special defenses and asserting that the defendants, by enforcing the terms of the contract and making payments pursuant to the terms of the contract, were precluded from asserting the invalidity of the contract and, by those same actions, had waived their right to assert the invalidity of the contract. Id., 164–65.

The defendants moved for summary judgment with supporting affidavits and a memorandum of law, claiming that the underlying contract was unenforceable pursuant to § 20-429 (a) (6). The plaintiff filed affidavits and a memorandum of law in opposition to the defendants' motion, contending that there was a genuine issue of material fact as to the defendants' bad faith. In granting the defendants' motion for summary judgment, the trial court stated that although bad faith on the part of the homeowner would appear to preclude the homeowner from asserting the protection of the act under *Barrett Builders* v. *Miller,* 215 Conn. 316, 328, 576 A.2d 455 (1990), the plaintiff had not provided any evidence that would raise a genuine issue relating to the bad faith of the defendants. The trial court further ruled that waiver was not applicable to this action because *Barrett Builders* made it clear that a homeowner does not waive the protection of the act simply by making payments and invoking certain provisions of the contract.

The Appellate Court affirmed the judgment of the trial court. Recognizing that *Barrett Builders* "suggested that bad faith on the part of a homeowner might preclude use of the [a]ct as a defense"; *Wadia Enterprises, Inc.* v. *Hirschfeld,* supra, 168; the Appellate

---

[4] In their second answer, the defendants also denied that the liquidated damage clause was a penalty and admitted the extension of the completion date.

Court defined the concept of bad faith as involving some element of "design or motive of interest or ill will." Id., 169. After examination of the pleadings, the Appellate Court determined that the plaintiff had not provided any evidence that the defendants "knew of the defect in the contract and affirmatively concealed or induced the plaintiff into signing the contract so as to be in a position thereafter to utilize the [a]ct's protection." Id., 170. The Appellate Court concluded, therefore, that the plaintiff had failed to present a genuine issue of bad faith on the part of the defendants. The Appellate Court also concluded that "[i]n light of the clear expression of public policy establishing that the [a]ct precludes a contractor's recovery under an unenforceable home improvement contract, the plaintiff's claims that the defendants are not to be afforded the [a]ct's protection because of waiver, estoppel and consent must fail." Id., 170–71.

We granted certification limited to the following issue: "Was the Appellate Court correct in upholding the Superior Court's finding that no genuine issue of material fact was raised by the plaintiff relating to bad faith, waiver, estoppel and/or consent on the part of the defendants?" *Wadia Enterprises, Inc.* v. *Hirschfeld,* 222 Conn. 904, 606 A.2d 1330 (1992). We conclude that the Appellate Court's decision was correct.

I

The plaintiff first contends that the trial court improperly concluded that no genuine issue of material fact existed as to its claim that the defendants had acted in bad faith in invoking the act as a defense. We disagree.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings,

affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact"; (internal quotation marks omitted) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates,* 219 Conn. 772, 780–81, 595 A.2d 334 (1991); *D.H.R. Construction Co.* v. *Donnelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980); "it [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." *Connell* v. *Colwell,* 214 Conn. 242, 251, 571 A.2d 116 (1990). "The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment." *Farrell* v. *Farrell,* 182 Conn. 34, 39, 438 A.2d 415 (1980); *Real Estate Auctions, Inc.* v. *Senie,* 28 Conn. App. 563, 567, 611 A.2d 452 (1992). Moreover, "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates,* supra, 781, quoting *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984).

In *Barrett Builders* v. *Miller,* supra, *A. Secondino & Son, Inc.* v. *LoRicco,* 215 Conn. 336, 340, 576 A.2d 464 (1990), *Liljedahl Bros., Inc.* v. *Grigsby,* 215 Conn. 345, 350, 576 A.2d 149 (1990), and *Sidney* v. *DeVries,* 215 Conn. 350, 354, 575 A.2d 228 (1990), we stated in dictum that, in the absence of bad faith, a homeowner is privileged to repudiate a home improvement contract that violates the act. In *Habetz* v. *Condon,* 224 Conn. 231, 618 A.2d 501 (1992), decided today, we have more fully addressed the bad faith exception and held that proof of a homeowner's bad faith will preclude that

homeowner from repudiating with impunity a home improvement contract that violates the act. We defined bad faith as involving " 'actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.' " Id., 237. In other words, "[b]ad faith means more than mere negligence; it involves a dishonest purpose." Id.

The plaintiff claims that it has raised a factual issue as to the defendants' bad faith attempt to use the act as both a sword and a shield to avoid final payment to the plaintiff. The plaintiff directs our attention to the following evidence that it submitted in opposition to the defendants' motion for summary judgment: the defendants prepared the underlying defective contract through their New York attorneys and architect and then relied on the same contract as a defense to its enforcement; the defendants certified payments and retained five percent; despite certification by their agent, the defendants refused to make final payment, alleging rights in the contract they now seek to repudiate; the defendants withheld one half of the payments pursuant to the contract; the defendants forced the plaintiff to extend credit for change orders under provisions of the contract they now seek to repudiate; and the defendants enforced the delay damages clause and alleged breach of specific parts of the very contract they seek to repudiate.

None of these facts, however, indicates a dishonest purpose. The fact that the defendants had their architect and New York attorneys draft the contract does not in and of itself indicate bad faith on the part of the defendants. There is no allegation or proof that the attorneys intentionally omitted this requirement in order to have an escape hatch. At most, the New

York attorneys were negligent in failing to consult Connecticut law and to include the required clause in the contract. An honest mistake does not rise to the level of bad faith. *Habetz* v. *Condon,* supra, 237; see also *Funding Consultants, Inc.* v. *Aetna Casualty & Surety Co.,* 187 Conn. 637, 447 A.2d 1163 (1982); compare *Grasso Paving & Landscaping, Inc.* v. *Five Twenty-one Corporation,* Superior Court, judicial district of Stamford-Norwalk, Docket No. CV91-120669 (July 27, 1992) (7 C.S.C.R. 844) (genuine issue of material fact as to the homeowner's bad faith assertion of the act since the homeowner had asserted the act as a defense in another action prior to performance of the services for which the contractor was seeking compensation).

The essence of the remainder of the plaintiff's allegations is that the defendants acted in bad faith by initially enforcing the contract and subsequently asserting the contract's invalidity as a defense to a suit by the contractor. This contention does not, by itself, present a claim of bad faith. There is nothing dishonest or sinister about homeowners proceeding on the assumption that there is a valid contract, enforcing its provisions, and later, in defense to a suit by the contractor, upon learning that the contract is invalid, then exercising their right to repudiate it. See *Caulkins* v. *Petrillo,* 200 Conn. 713, 720, 513 A.2d 43 (1986). As noted above, the plaintiff did not allege that the defendants knew of the violation earlier, or that they purposely drafted the contract in violation of the act in order later to avoid their obligation to pay. On the contrary, the plaintiff did not even challenge the defendants' statements in their affidavits that they had been unaware of the act prior to the commencement of this lawsuit. *Farrell* v. *Farrell,* supra, 39–40.[5]

---

[5] Moreover, in their answer, the defendants stated that they had relied on the act for the first time after suit had been brought. This statement was relied upon by the plaintiff at oral argument in connection with the

The plaintiff further claims that bad faith is a factual question and as such is not appropriately determined by a motion for summary judgment. The plaintiff relies on cases in which we have held that issues of motive, intent and good faith are not properly resolved on a motion for summary judgment. See, e.g., *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 309, 407 A.2d 971 (1978); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 376, 260 A.2d 596 (1969). We have also held, however, that even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact. See, e.g., *Connell* v. *Colwell,* supra, 251 (summary judgment granted in issue of fraudulent concealment); *Dubay* v. *Irish,* 207 Conn. 518, 534, 542 A.2d 711 (1988) (summary judgment granted in issue of wilful, wanton or reckless conduct); *Multi-Service Contractors, Inc.* v. *Vernon,* 193 Conn. 446, 452, 477 A.2d 653 (1984) (summary judgment granted on questions of good faith and wilful misconduct). In this case, the plaintiff has failed to present the necessary factual predicate to raise a genuine issue as to the defendants' bad faith. Therefore, the Appellate Court properly affirmed the trial court's decision to grant the defendants' motion for summary judgment as to the plaintiff's claim of bad faith.

## II

The plaintiff next claims that the defendants impliedly consented to the work performed and thus cannot now assert the protection of the act. We disagree.

implied waiver argument. See part III, infra, of this opinion. This undisputed fact does not contradict, but rather supports, the statements in the defendants' affidavits denying prior knowledge of the act.

The legal significance of the plaintiff's argument appears to be that by impliedly consenting to the work performed by the plaintiff, the defendants formed an implied-in-fact contract. See *Bershtein, Bershtein & Bershtein* v. *Nemeth,* 221 Conn. 236, 242, 603 A.2d 389 (1992). We explicitly addressed this issue in *Liljedahl Bros., Inc.* v. *Grigsby,* supra, 350, and concluded that the act does not permit a home improvement contractor to recover under a theory of implied-in-fact contract when the contract violates the provisions of the act. See also *Caulkins* v. *Petrillo,* supra, and the *Barrett Builders* line of cases (implicit that the homeowner consented by conduct to the contractor's work, yet not precluded from asserting the protection of the act). The fact that a homeowner may have impliedly consented to performance by the contractor does not preclude the homeowner from asserting the protection of the act.[6]

### III

The plaintiff's final claim is that the defendants impliedly waived the protection of the act by enforcing certain provisions of the contract and making payments pursuant to the contract. Specifically, the plaintiff claims that by retaining five percent of the payment due, requesting extensions of credit, and certifying payments, the defendants waived the right to raise the invalidity of the contract. We are unpersuaded.

Waiver is the intentional relinquishment of a known right. *Dragan* v. *Connecticut Medical Examining*

---

[6] We reserve the question, as we did in *Barrett Builders* v. *Miller,* 215 Conn. 316, 327 n.5, 328, 576 A.2d 455 (1990), of whether the homeowner can recover "a down payment or progress payments made during the performance of home improvements but prior to the discovery of the invalidity of the contract. . . . Arguably, a homeowner who has made such progress payments has impliedly consented to the work performed. The issue raised by a suit to recover partial payments differs substantially from that raised by refusal to pay sums alleged to be due on an invalid contract."

*Board,* 223 Conn. 618, 629, 613 A.2d 739 (1992); *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 561, 316 A.2d 394 (1972). Waiver need not be express, "but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citation omitted; internal quotation marks omitted.) *Novella* v. *Hartford Accident & Indemnity Co.,* supra, 562; *O'Hara* v. *State,* 218 Conn. 628, 641, 590 A.2d 948 (1991). Assuming that implied waiver may avoid the right to rely on the statute, in order to sustain such a claim, the plaintiff would still have to make a showing that the defendants knew of their right to invalidate the contract under the act before they could waive its protection. The plaintiff has failed to establish that the defendants knew about the requirements of the act. In the absence of such proof, the defendants, as homeowners, were legally entitled to assume the validity of their contract with the plaintiff and to enforce its terms. Accordingly, the defendants did not impliedly waive the protection of the act.[7]

[7] We conclude, without deciding the applicability of the plaintiff's equitable estoppel claim, that the plaintiff has failed to demonstrate the factual predicate necessary to sustain an action under the doctrine of equitable estoppel. "[Equitable] estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) *O'Sullivan* v. *Bergenty,* 214 Conn. 641, 648, 573 A.2d 729 (1990). Additionally, "it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Internal quotation marks omitted.) Id., 650; *Spear-Newman, Inc.* v. *Modern Floors Corporation,* 149 Conn. 88, 91–92, 175 A.2d 565 (1961). Even if the defendants, by drafting the contract, induced the plaintiff to believe that the contract was valid and the plaintiff relied on the validity of the contract, the plaintiff cannot show that he exercised due diligence in ascertaining the act's requirements and yet still failed to be familiar with the provisions of the act. As a licensed home improvement contractor, he certainly had the means

The judgment is affirmed.

In this opinion the other justices concurred.

and the obligation to discover the requirements of a home improvement contract. "We cannot apply the doctrine of equitable estoppel in a case in which the party requesting the relief claims ignorance of the laws governing his own profession, when such ignorance of the law is the primary cause of his need for such relief." *Currie* v. *Marano,* 13 Conn. App. 527, 532, 537 A.2d 1036, cert. denied, 207 Conn. 809, 541 A.2d 1238 (1988).