[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This is a suit by a contractor, the plaintiff, Caulkins Designs, to recover the balance it claims is due for work performed at the home of Karen and Gerhard Trieb. A certificate of Mechanic's Lien was filed to secure the balance of $97,425.77 with interest that the plaintiff claims is owing to it. The sum due on the lien remains unpaid and the plaintiff has instituted this action to foreclose the lien. CT Page 16342
The defendants have filed a motion for summary judgment claiming there was a failure to comply with the requirements of the Home Improvement Act § 20-418 et seq. (the act). There is no doubt and both parties seem to agree that the contract entered into between the parties was a "home improvement contract," see §§ 20-419 (4) and (5) of the General Statutes. Section 20-429 of the act provides that "(a) no home improvement contract shall be valid or enforceable against an owner unless it . . . (7) contains a starting and completion date. . . ." Subsection (f) states a contractor who has complied with various of the requirement of subsection (a) including (a)(7) can recover for work performed if a court determines it would be inequitable to deny such recovery.
The defendants have filed a motion for summary judgment based on the alleged noncompliance with the provision of subsection (7) of § 20-429 (a). The contract between the parties referred to as the "proposal" was prepared by the defendant and in the blanks on the upper right-hand corner of the first page where it says, "approximate starting date" and "approximate completion date," it says in both blank spaces "not available."
The defendants argue that because the proposal fails to set forth a starting and completion date as required by § 20-429
(a)(7), it is unenforceable as a matter of law pursuant to the holding in Rizzo Pool Co. v. DelGrosso, 232 Conn. 666 (1995).
The plaintiff argues that under the circumstances as existed here, there was compliance with the act. Mr. Caulkins submitted an affidavit claiming that on April 14, 1997, he and the Triebs met to review a proposed contract. He claims the terms of the contract were discussed "including the specific issues of starting and completion dates, as all were aware that these dates were required elements of the contract." The affidavit goes on to say that firm dates would not be given "because full permitting was not yet available and the scope of the project was still unclear due to incomplete architectural plans. . . ." The Caulkins' affidavit goes on to say that "nevertheless," the Triebs wanted the plaintiff to begin work "and as a result, the portions of the contract which related to starting and completion dates were typed in as `not available' being the only specification of starting and completion dates. The Triebs were aware of and consented to this form of contracting at the time of our meeting and executed the contract as such." The Triebs do not CT Page 16343 contest these just mentioned factual allegations but argue that despite these claims the act was not complied with.
The plaintiff also argues that apart from the strict question of compliance with the act it has presented a question of fact as to whether the defendants have knowingly and voluntarily waived the requirements of the act with respect to including a specific and firm starting and completion date in the contract proposal. Finally, the plaintiff argues that it has raised a question of fact as to whether the defendants have made a bad faith invocation of the protections of the act.
Regarding the waiver issue, the second Trieb affidavit states when he signed the proposal, Mr. Trieb was unaware of the provisions of the act and that he was signing a "home improvement contract."
He states that he did not know the act required a commencement and completion date and that their absence would entitle him to invalidate the contract. He first learned of the act's requirements from his attorney several months after signing the proposal.
The rules applicable to deciding a motion for summary judgment are well known. A court cannot grant such a motion if a genuine material issue of fact must be decided. A party has a constitutional right to a jury trial. On the other hand, if no genuine issue of material fact exists and the dispute between the parties can be decided as a matter of law, it should be so decided to prevent the continuation of litigation that is not meritorious.
 Compliance with Act
The purpose of the act is remedial in nature; the law was passed for the protection of the public. Caulkins v. Petrillo,200 Conn. 713, 720 (1986). The legislative history indicates the bill was intended to provide "minimal" safeguards for consumers and the problems the bill was intended to address "include contractors' workmanship, diligence, substitution of inferior materials, high costs and extra charges," Id. at 200 Conn. 719.
The language of the act is mandatory in nature. Certain provisions "shall" be complied with under subsection (a) to §20-429. The words "not available" do not set forth firm dates, CT Page 16344 the fact that the parties talked about the inability to determine such dates does not belie the fact that no such firm dates were written into the contract which is a mandatory and explicit requirement of subsection (a)(7).
The plaintiff argues that this case should be distinguished from Rizzo because as noted the date issue was discussed, the parties realized no such dates could be set forth at the time the contract was signed, "the law does not require one to perform the impossible," "not available was the best that could be done under the circumstances." (Page 7 of plaintiff s brief).
But this act posits the notion of an unsophisticated homeowner dealing with an experienced business person engaging in these contracts for a living and well aware of factors such as the time it takes to complete jobs, get permits, receive materials, etc. Given this scenario, the dangers to the consumer presented by absence of firm commencement and completion dates still exist even though their absence and the "reasons" therefore were brought to the homeowner's attention by the contractor and even though after the "conversation" between the homeowner and experienced businessperson the homeowner wants work to start without firm dates.
Taking an overview of the purposes of the act, but still mindful of fairness to the contractor, it makes more sense to say what the legislature made clear. Firm dates must be set forth. If the contractor is still pressed by the homeowner to begin work even though no such firm dates can be indicated through no one's fault, then the solution is easy. Let the contractor secure a written waiver from the homeowner of his or her rights under the act, specifically the right to have a commencement and completion date, cf. Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240,251 (1992). And, of course, in the appropriate circumstances, of course, the contractor can still raise a bad faith claim and argue that the homeowner cannot press his or her rights under the act because of bad faith invocation of such rights, cf. Habetz v.Condon, 224 Conn. 231 (1992).
The result of all this is that where the act is not literally complied with, there is a presumption that the contractor cannot bring suit against the homeowner. The contractor can overcome this presumption only if waiver or bad faith is proved and on these matters the contractor has the burden of proof. CT Page 16345
The final way in which the plaintiff contractor seeks to distinguish Rizzo is to say that in that case the plaintiff contractor did not even attempt to begin construction for a year after the contract was made, whereas in this case, a significant amount of the addition had been built and substantial payments had been made to the plaintiff. But equities of that nature will not forestall the strict application that the provisions of the act explicitly require, or, to be more exact, force a strained interpretation of statutory language that is intended to be remedial. Thus, subsection (a)(1) of § 20-429 provides that home improvement contracts be in writing. In Caulkins v. Petrillo,200 Conn. 713 (1986), that provision of the act was violated because the work was done under an oral contract. The court had no hesitancy in holding that the enforcement of the oral contract was barred under the act even though the work had been fully performed, id. page 719, also see Barrett Builders v. Miller,215 Conn. 316, 322 (1990) (quasi-contract claim). There is no indication that our court or the legislature regard the policy set forth in (a)(1) of § 20-429 as any more important to the purposes of the act than that set forth in subsection (a)(7), see also Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 335 (1990).
The court concludes that there has not been compliance with the provision of § 20-429 (a)(7) requiring written contracts with "a starting date and a completion date." The term "not available" by definition does not comply with the act.
 Waiver and Bad Faith
The plaintiff asserts that even if the act was not complied with because the commencement and completion date were not included in the contract an issue of fact remains as to whether the defendants waived their rights to take advantage of the act and also an issue of fact exists as to whether because of bad faith on their part the defendants should be precluded from taking advantage of the act's ameliorative provisions.
 (a)
The plaintiff argues that the defendants waived their rights under the act because the plaintiff claims that the commencement and completion dates were discussed and all parties "were aware that these dates were required elements of the contract." Nevertheless, the defendants wanted to have work on the contract begin and it was to the tune of over $97,000. In WadiaCT Page 16346Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 252
(1992), the court recognized the possibility that a waiver argument could apply in certain circumstances to defend against a claim that relied on the contractor's failure to comply with the provisions of the act. In Wadia, the plaintiff contractor argued that the defendants had waived their rights under the act by themselves enforcing certain contract provisions and making some payments under the contract. Relying on traditional waiver theory, the court rejected this position. It said at page 252, that in order to assert a waiver claim the contractor plaintiff "would still have to make a showing that the defendants knew of their right to invalidate the contract under the act before they could waive its protection. The plaintiff has failed to establish that the defendants knew about the requirements of the act." The court went on to say that without such proof the defendants were entitled to assume the contract's validity and their own attempts to enforce its terms would not waive any rights under the act.Wadia cited Novella v. Hartford Accident Indemnity Co.,163 Conn. 552 (1972) which, quoting from other cases said, "To constitute waiver, `there must be both knowledge of the existence of the right and intention to relinquish it. . . .' `Waiver involves the idea of assent and assent is an act of understanding.' This presupposes that the person to be affected has knowledge of his (or her) rights but does not wish to assert them," id. page 562 (emphasis added by court).
As previously noted, the Triebs attempt to rely on this language by an affidavit wherein Mr. Trieb said he did not know that his contract was a home improvement contract, did not know the act required the requisite dates, and did not know of his right to invalidate the contract if the starting and completion dates were not included in the contract proposal. In purely linguistic terms, the defendants appear to have a strong argument. How could they have waived their rights under an act whose existence they were not aware of at the time they signed the contract. The plaintiff does not dispute by affidavit or otherwise that the Triebs were unaware of the act, its provisions, and their rights under the act so summary judgment for the defendants would seem to be in order.
However, an unrefuted statement in the contractor's affidavit causes this court, at least, some concern. In paragraph 5 of the Caulkins' affidavit, it refers to the point at which the contract was signed and says: "At the time of this meeting, the terms of the proposed contract were discussed, including specific issues CT Page 16347 of starting and completion dates, as all were aware that these dates were required elements of the contract." Why doesn't this present a genuine issue of material fact? In other words, given this statement, its most favorable inference, as the court must, does not this statement allege that the Triebs were made aware that without the dates there would be no enforceable contract, but being aware of that as the affidavit goes on to say they nevertheless told the contractor to proceed with the work which it did to their alleged benefit? Should waiver not be found because the magic words, "Home Improvement Act," were not mentioned? In other words, if these people were told, in effect, that they had rights the act provided them, but were not told the source of those rights, is not the ameliorative purpose of the act satisfied? If knowing their right they still chose to have the contractor go on with its work why wouldn't that be a waiver?
A position contrary to this would almost be tantamount to saying there should be no waiver permitted under such an ameliorative act?
On the other hand, the court is reluctant to make a ruling in this case based on the waiver argument. Given the ameliorative purposes of the act, waiver under the circumstances alleged here would have to be strictly proved. It must be shown that the defendants were explicitly told that contract formation required the necessary dates and that they chose to have the work proceed. Perhaps it could even be argued that given the act's requirements of a written contract (§ 20-229 (a)(1), a waiver of the act's protections should also be written. However, this latter issue has not been raised by the parties and the court will not address it.
 (b)
The plaintiff also raises a bad faith argument against the defendants. In Habetz v. Condon, 224 Conn. 231 (1992), the plaintiff contractor and the defendant homeowner entered into a written contract. The contract did not contain notice of the homeowner's cancellation rights which is violative of subsection (a)(6) of § 20-429. The homeowner sued the contractor who filed a counterclaim for monies he claimed he was owed. The trial court rendered judgment for the defendant contractor on both counts of his counterclaim, It concluded that, although there was "minor noncompliance" by the contractor with § 20-429 (a) (contract failed to include notice of cancellation provision), the CT Page 16348 homeowner's bad faith did not bar a recovery by the contractor. The court never described the "bad faith" involved in the case beyond noting that the trial court found that "the evidence of bad faith permeated the dealings between the parties," id. at224 Conn. 235, fn 8. Habetz did hold "that a homeowner cannot in bad faith invoke the contractor's statutory violation as a basis for (the homeowner's) own repudiation of the contract," id. at page 236 fn. 10. In Wadia Enterprises, Inc. v. Hirschfeld,224 Conn. 240 (1992), the court dealt again with a situation where the contractor raised bad faith as a defense to the homeowner's claim that the contractor could not recover under the contract because there was a failure to comply with the act. The court noted that in Habetz, "bad faith" was recognized as an appropriate defense to a contractor's claim and noted that it defined "bad faith" as more than mere negligence but carried with it notions of a "dishonest purpose," not an honest mistake but "some interested or sinister motive," 224 Conn. at page 248.
The court, however, upheld the trial court's rejection of the three bad faith claims made. The contract was defective because it did not contain a cancellation provision (see § 20-249 (a)(6). The contractor alleged bad faith in the homeowner's defense against the enforcement of the contract because the homeowner's own lawyers drew up the contract. The trial court rejected this bad faith argument and the Supreme Court said there was no error because there was no allegation, let alone proof, that the New York lawyers intentionally left out the cancellation provision so that their homeowner clients would have an escape hatch. At most, the lawyers were negligent in failing to research Connecticut law and an honest mistake does not translate into bad faith.
The second bad faith argument was equally unavailing. No bad faith could be found where the homeowners initially enforced the contract and then subsequently asserted the contract's invalidity as a defense. The court noted that the plaintiff contractor did not allege the homeowners knew of the violation earlier or purposely had it drafted in violation of the act to leave an escape hatch against the contract's enforcement. The homeowners' affidavits claiming they did not know of the act prior to suit was not challenged so it could hardly be claimed that assertion of the invalidity of the contract was made in bad faith. Finally, the court rejected the notion that since bad faith was a question of fact, rejection of the defense could not occur by way of summary judgment, 224 Conn. at 249-50. CT Page 16349
In Dinnis v. Roberts, 35 Conn. App. 253 (1994), as the defendant here notes, the contractor had done 85 percent of the job. The homeowners terminated the contractor's services without explanation. The appellate court upheld the trial court's rejection of the contractor's suit in quantum meruit and unjust enrichment, and in so doing, dismissed as a matter of law the contractor's claim that the homeowners acted in bad faith in the execution and repudiation of the contract.
The contract was defective in that it contained no cancellation provision or starting or completion date in violation of subsections (a)(6) and (c)(7) of the act. The court noted that the homeowners claimed they had no knowledge of the provisions of the act prior to consulting an attorney (and presumably before any work was done). The Dinnis court, relying on the facts before it, did not feel obliged to decide whether the bad faith exception is limited to instances of bad faith relating to the formation of, or inducement to enter into a home improvement contract. The court specifically declined to extend the bad faith exception beyond these perimeters,35 Conn. App. at pp. 258-259.[1]
What concerns the court here is what concerned it in the waiver argument. The court must give the contractor's affidavit its best reading and there it is claimed that these homeowners were told about starting and completion dates and all contracting parties "were aware that these dates were required elements of the contract." Paragraph. 5 of Caulkins' affidavit. A possible inference of this statement is that although the homeowners were not aware of the act at the time of contract formation, and there is nothing to rebut their affidavit to that effect, they were made aware of the fact that a valid contract could not otherwise be entered into without the necessary information concerning starting and completion dates. The court at this time will not rule as a matter of law that under such circumstances a bad faith argument cannot be raised by the contractor. In other words, we have a homeowner who seeks to rebut the bad faith argument where a contractor had done substantial work, by claiming the contract to do the work violated the act and was void ab initio and the homeowner did not know of the act and its provisions.
But despite lack of knowledge of the act, the homeowner is alleged to have been made aware of the fact that the contract might not be valid for the very same reasons that would have voided it under the act and just did not know these reasons also CT Page 16350 violated the act. To permit the homeowner to rebut the bad faith argument under these circumstances, because the act itself was not known to the homeowner, would be little more than a homage to formalism having little to do with consumer protection. In any event, without a full exploration of the relevant conversation at the time of contract formation, the court will not grant the defendant's motion for summary judgment.
Corradino, J.