[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (128.00)
The plaintiffs in this action are Marianne G. Cassidy, Executrix of the Estate of Jane M. Gartland, and Elizabeth Cook. The complaint arises from Jane M. Gartland's death while she and her sister, Cook, were on a travel tour in Europe in 1996. The complaint names five defendants, including Claire Doucette d/b/a Phillips Travel, (Doucette hereinafter, referred to in the complaint as "Phillips"), and Trafalgar Tours, Inc., (Trafalgar USA hereinafter; referred to in the complaint as Trafalgar Tours, Inc. and Trafalgar Tours, U.S.A., Inc."). This court recently ruled on summary judgment motions filed by two other defendants in this action, Estate ofGartland v. Doucette, (June 19, 2002), and familiarity with that decision is presumed.
 I. — FACTS
The plaintiffs allege the following facts: In April 1996, Cook and Gartland retained the services of Doucette in order to advise them on booking and purchasing a guided tour of parts of Europe. (Second Amended Complaint, Count one, ¶ 8.) On the advice and recommendation of Doucette, a travel agent employed by Phillips Travel, Cook and Gartland purchased the Trafalgar Tours guided tour known as the European Whirl taking place from August 8, 1996, to August 23, 1996. (Second Amended Complaint, Count one, ¶ 9.) Cook and Gartland also purchased travel insurance which plaintiffs alleged was issued by Trafalgar and Monument Life, and administered by Medex and Travel Mate. The plaintiffs allege that under the terms of the policy, the defendants were to provide to the plaintiffs certain specified benefits, including all necessary medical CT Page 8307 assistance and monitoring and appropriate medical attention when needed while on the tour. (Second Amended Complaint, Count one, ¶ 16.)
Cook and Gartland began the tour on August 8, 1996. While on the tour, Gartland experienced worsening physical problems which were brought to the attention of the Trafalgar tour guide. On August 20, 1996, both Cook and Gartland were stricken with a severe respiratory infection. On August 21, 1996, Gartland died in her hotel room on tour. The plaintiffs allege that the cause of death was congestive heart failure.
Count one of the complaint asserts a cause of action for breach of contract against Doucette (referred to in the complaint as: d/b/a Phillips Travel) for failing to provide the promised medical care, attention, monitoring and assistance alleged to have resulted in the death of Gartland. Count two asserts the same against Trafalgar USA. In count six of the complaint, the plaintiffs assert a cause of action for breach of contract against Doucette for failing to pay for and/or reimburse the plaintiffs for all of the expenses and costs incurred as a result of Cook's illness and Garland's death, including the resulting trip cancellation and/or interruption and emergency evacuation and repatriation. Count seven asserts the same against Trafalgar USA.
In count eleven of the complaint, the plaintiffs assert a cause of action for wrongful death against both Doucette and Trafalgar USA. Specifically, it is alleged that the breach of their contractual obligations to provide the promised medical care resulted in Gartland's death. It is also alleged that the defendants and their respective agents, servants and/or employees were careless and negligent causing the death of Gartland by failing to properly advise and inform on what tour to purchase, failing to properly train respective agents, and/or employees, to recognize signs of medical problems or illness of tour participants in order to insure timely medical intervention, and failing to take steps to insure timely medical intervention, and as a result of such negligence, plaintiffs suffered damages.
In count twelve of the complaint, the plaintiff Cook assert a cause of action for negligent infliction of emotional distress against both Doucette (d/b/a Phillips Travel) and Trafalgar USA, in that their failures to act and their negligence as set forth in count eleven, negligently inflicted emotional distress on her as she observed the death of her sister.
On October 17, 2000, Doucette and Trafalgar USA filed a motion for summary judgment as to counts one, six, eleven and twelve against Doucette, and counts two, seven, eleven and twelve against Trafalgar USA. CT Page 8308
 II. — DISCUSSION
A. Summary Judgment Standard
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [17-46]." (Brackets in original; internal quotation marks omitted.) H.O.R.S.E. of Connecticut, Inc. v. Washington,258 Conn. 553, 559, 783 A.2d 993 (2001).
"[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban RedevelopmentCommission, 158 Conn. 364, 378-79, 260 A.2d 596 (1969). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Brackets in original; internal quotation marks omitted.)H.O.R.S.E. of Connecticut, Inc. v. Washington, supra, 258 Conn. 560.
The courts hold the movant of a summary judgment motion to a strict standard when determining if it has met the burden of showing the absence of any genuine issue as to all the material facts thereby entitling it to judgment as a matter of law. See, e.g., Witt v. St. Vincent's MedicalCenter, 252 Conn. 363, 373 n. 7, 746 A.2d 753 (2000). Therefore, in order to prevail on their motion, Doucette and Trafalgar USA as "the [movants] must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Id. "It is not enough for the moving party merely to assert the absence of any disputed factual issue; the moving party is required to bring forward . . . evidentiary facts, or substantialevidence outside the pleadings to show the absence of any material dispute." (Emphasis in original; internal quotation marks omitted.) Dotyv. Shawmut Bank, 58 Conn. App. 427, 430, 755 A.2d 219 (2000).
B. The Provision of Medical Services
CT Page 8309
As to counts one and six against Doucette, and two and seven against Trafalgar USA, several documents have been submitted by the defendants in support of their motion including a copy of the insurance brochure describing the benefits provided therein. (Defendants' Exhibit A to February 27, 2002, Damewood Affidavit.) This brochure serves as the insurance policy in this case. The policy expressly provides a benefit in the form of payment of certain expenses arising from: physician-ordered medical services, ambulance services, prescription medications, emergency dental treatment, expenses incurred for medical evacuation, transportation, and preparation and transport of remains to the United States. (Defendants' Exhibit A to February 27, 2002, Damewood Affidavit.) The insurance plan also provides a 24-hour multi-lingual telephone service, which is described as one that provides help and advice with medical emergencies by helping to locate physicians, dentists, or medical facilities, helping to arrange and paying for medical evacuations, providing emergency medical payments, and providing a telephone interpretation service to transmit messages to family, friends, and business. Nowhere in the policy are there any provisions obligating Doucette or Trafalgar USA to provide "medical care, attention, monitoring and assistance."
"The terms of an insurance policy are to be construed according to the general rules of contract construction." (Internal quotation marks omitted.) Buell Industries v. Greater New York Mutual Ins., 259 Conn. 527,538, 791 A.2d 489 (2002). "The interpretation of whether an insurance policy is ambiguous is a matter of law for the court to decide." (Internal quotation marks omitted.) Metropolitan Life Ins. v. Aetna Casualty Surety Co., 255 Conn. 295, 305, 765 A.2d 891 (2001). In deciding whether the policy is ambiguous, the court must view the policy from the perspective of a reasonable layperson in the position of the purchaser of the policy. Israel v. State Farm Mutual Automobile Ins. Co., 259 Conn. 503,508, 789 A.2d 974 (2002).
The language of the insurance policy in the present case is not ambiguous. There is no language providing for the type of medical assistance and care that the plaintiffs allege should have been provided as part of the benefits under the policy. The policy expressly disclaims responsibility for the availability, quality, or results of any medical treatment or [the] failure to obtain medical treatment. (Defendants' Exhibit A to February 27, 2002, Damewood Affidavit.) Moreover, with regard to Doucette, nowhere in the policy is Doucette or Phillips Travel identified as being either one of the underwriters of the policy, as a benefit provider, or as an administrator of any of the benefits.
Doucette, and Sue Ellen Bogues, owner of International Destinations, CT Page 8310 Inc., d/b/a Phillips Travel, have submitted affidavits in which both state that neither Doucette, nor Phillips Travel, have any relation to the entities involved in the provision of benefits under the policy, nor do they have any role in the administering of benefits under the policy. Further, both state that they did not make any offer to monitor or reimburse Cook or the decedent for medical coverage or trip interruption. Although Trafalgar USA funds the reimbursements and refunds for the described trip interruption/cancellation portion of the policy, (Defendants' Memorandum, October 17, 2001, p. 18, n. 6; Defendants' Memorandum, February 18, 2002, p. 16; Tanowitz Affidavit, ¶ 3.), nowhere in the description of what is provided for under that portion of the policy is there any provision for medical care.
While "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party," (internal quotation marks omitted) Cunha v. Colon, 260 Conn. 15,18, n. 6, 477 A.2d 1005 (2002); "it [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Brackets in original; internal quotation marks omitted.)Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 247, 618 A.2d 506
(1992).
As pointed out in this court's June 19, 2002, decision relating to insurance companies and agents, reasonable lay persons understand that insurance companies and agencies do not provide medical care; that is, in most cases, provided by licensed medical practitioners and facilities. At most, insurance companies and agencies provide the means to pay for
medial care. It is even more obvious that travel agents and tour operators do not provide medical services. The plaintiffs have not submitted any evidence to support their allegation that the travel insurance policy required Doucette or Trafalgar USA to provide the type of medicare care that they allege in their complaint. "To establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief" (Citations omitted.) New MilfordSavings Bank v. Roina, 38 Conn. App. 240, 244, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).
"The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. Southern New England Telephone Co.,44 Conn. App. 657, 663, 691 A.2d 1107 (1997). "If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his CT Page 8311 burden of proof." (Internal quotation marks omitted.) 2380 Whitney AvenueCorp. v. Heritage Canal Development Associates, Inc., 33 Conn. App. 563,569, 636 A.2d 1377 (1994).
Because the policy did not obligate the defendants to provide for "medical care, attention, monitoring and assistance" and the plaintiffs did not submit any evidence to substantiate their allegations that it did so, and because the plaintiffs have not provided any evidence that the defendants made oral obligations to provide "medical care, attention, monitoring and assistance," Doucette and Trafalgar USA cannot be found in breach of any contractual obligations for not providing such services. As such, the court grants their motion for summary judgment on counts one and two.
C. Failure to Pay Policy Benefits
In count six of the complaint, the plaintiffs allege Doucette breached her contractual obligations to the plaintiffs, by failing to pay for and/or reimburse the plaintiffs for all of the expenses and costs incurred as a result of Cook's illness and the decedent's death and the resulting trip cancellation and/or interruption, emergency evacuation and repatriation. (Second Amended Complaint, Count six, ¶ 19.) As discussed above, the policy does not in any way identify either Doucette or her employer, Phillips Travel, as a party involved with the underwriting or paying and administering of benefits. Rather the policy identifies Monumental Life Insurance Company, Monumental General Casualty, International Life Investors Insurance Company, and US Speciality Insurance Company as underwriters for the insurance plan benefits provided, and Trip Mate Insurance Agency, Inc. as the Program Administrator for all claims submission. In addition, Doucette asserts in her affidavit that she never made any offers of reimbursement for medical coverage or trip interruption. The plaintiffs have not provided any evidence in support of their allegation that Doucette agreed to pay for and for reimburse the plaintiffs for the various expenses they seek payment or reimbursement for. Thus, since no genuine issue of material fact exists on whether Doucette had an obligation to pay and/or reimburse claims, the court finds that Doucette is entitled to summary judgment as a matter of law on count six because without an obligation to pay claims, there cannot be a breach for failure to pay.
In count seven of the complaint, the plaintiffs assert a cause of action for breach of contract against Trafalgar USA for failing to pay for and/or reimburse the plaintiffs for the cost of medical expenses, emergency assistance, accident and medical expenses, emergency evacuation, repatriation, trip cancellation and/or trip interruption. (Second Amended Complaint, Count seven, ¶ 19.) The trip CT Page 8312 cancellation/interruption benefit funded by Trafalgar USA as discussed above, provides a benefit payment for trip cancellation/interruption, or delay, if due to: "Sickness, injury, or covered death . . . or other Unforseen Circumstances as defined in this Policy." (Defendants' Exhibit A to February 27, 2002, Damewood Affidavit.) Leon Smith, vice president and general counsel of Trafalgar USA, has submitted an affidavit in support of the motion for summary judgment. Smith avers that he has "firsthand knowledge of the practices and policies of Trafalgar USA," and that a "review of Trafalgar USA's records reveal that neither plaintiff ever made a claim under [this portion] of the travel insurance policy." (Smith Affidavit, ¶¶ 2, 16.)
The insurance brochure sets forth the procedure for claim submission. (Defendants Exhibit A to February 27, 2002, Damewood Affidavit.) Before a claim can be considered, it must be reported. Once the claim is reported, the claimant will be mailed a claim form to complete and return along with supporting documentation. According to the brochure, Trip Mate is designated as the Program Administrator to whom the claims are to be reported. Trafalgar USA maintains in its memorandum that "neither plaintiff ever filed a claim for benefits under this portion of the Policy with Trip Mate or Trafalgar USA." (Defendant's Memorandum, October 17, 2001, p. 18, n. 6.) An affidavit by Thomas M. Damewood, vice president for Projects and Administration for Trafalgar USA, has been submitted. Thomas M. Damewood states that Trafalgar USA never received notification that either the estate of the decedent or Cook had filed a claim, and was informed by Trip Mate that claims had never been received. In further support of this contention, an affidavit has been submitted by Linda Finkle, executive vice president of Trip Mate Insurance Agency, Inc., in which she affirms that Trip Mate did not receive any claims or claim forms for the decedent or Cook, and without such claims and supporting documentation, coverage cannot be provided for. (Finkle Affidavit, February 28, 2001, ¶ 6.)
Contrary to Trafalgar USA's position that there have been no claims filed under the trip cancellation/interruption portion of the policy, Gartland's son, James Gartland, states in his affidavit dated December 5, 2000, that he has made a claim for the benefits payable under the policy, including Part A,[1] on behalf of both his aunt and the estate of his mother. In his affidavit dated March 5, 2002, he confirms that claim forms were forwarded to the insureds' addresses, however, he admits he did not use them because based on his review of the policy, a filing of the claim form was not required. Rather, James Gartland states that all documents relating to all claims under the policies for both Cook and the decedent were forwarded to all of the attorneys for the defendants. (Gartland Affidavit, March 5, 2002, ¶ 4.) However, this information was given to the attorneys after the complaint for breach of contract was CT Page 8313 commenced.
The plaintiffs allege that Trafalgar USA breached its contractual obligations for failing to pay for and/or reimburse the plaintiffs for all the expenses and costs incurred. Again, outside of these mere assertions, they have not provided any evidence that they actually submitted claims for payment prior to this lawsuit to either Trafalgar USA or to Trip Mate, the program administrator, which the plaintiffs have acknowledged as the entity that handled and adjusted the claims arising out of the policy at issue. (Plaintiffs' Memorandum, March 5, 2002, p. 11.) "It is not enough . . . for the opposing party merely to assert the existence of . . . a disputed issue. . . . Rather, the party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Citation omitted; internal quotation marks omitted.) Doty v. Mucci, 238 Conn. 800, 808, 679 A.2d 945
(1996).
The court finds that based upon Trafalgar USA's assertion via the Smith, Damewood and Finkle affidavits that claims have not been received and the plaintiffs' admission via the Gartland affidavit that claim forms have not been submitted, there is no genuine issue of material fact that claims payable under the trip cancellation/interruption portion of the travel insurance policy were not filed with Trafalgar USA directly, nor with the program administrator. As such, Trafalgar USA could not have breached its contractual obligation to pay claims if no claims were submitted. Therefore, the court finds that Trafalgar USA is entitled to summary judgment as a matter of law on count seven of the second amended complaint.
D. Wrongful Death
In count eleven of the second amended complaint, the plaintiffs assert a cause of action against Doucette and Trafalgar USA for wrongful death. The plaintiffs claim that the breach of the defendants' contractual obligations to provide promised medical care resulted in Gartland's death. While the complaint doesn't specifically allege failure to properly advise on which tour to purchase pertains only to Doucette, based on the plaintiffs' arguments and evidence provided, the court adopts this position and will not address this allegation as to Trafalgar USA. Similarly, the complaint doesn't specifically allege failure to properly train or screen respective agents, servants, and/or employees applies only to Trafalgar USA, however, the court adopts this position based on the evidence provided.
As discussed earlier, neither Doucette nor Trafalgar USA had a CT Page 8314 contractual obligation to provide medical care to Gartland and therefore a wrongful death action under a breach of contract theory is not available.
1. Doucette's Negligence
In support of their allegation that Doucette was negligent in "failing to properly advise and inform the decedent [Gartland] which guided tour to purchase and take in order to insure that the decedent did not purchase and take a guided tour that was unreasonably strenuous and dangerous to the decedent given the decedent's health, medical history, age and physical condition," plaintiffs have submitted as Exhibit A, a Connecticut case, Cicchiello v. Reney Tours Plane Broker, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 460805 (May 3, 1996, Arena, J.). In Cicchiello, the plaintiffs alleged that in reliance on the defendant, the plaintiffs agreed to take their vacation at La Cabana, Inc., where the plaintiff suffered injury after an explosion from a gas stove. Id. The defendants countered that "it acted as a mere ticket agent and provided information on a resort specifically inquired about by the plaintiffs, and as a mere ticket agent, the defendant alleged it had no liability, nor duty to the plaintiff" Id. Adopting the rationale of the decisions in other jurisdictions, the court held that "if the defendant's actions were more extensive then a mere ticket agent, then his alleged conduct would create a duty running in favor of the plaintiffs to discover and disclose to the traveler material information." Id.
The plaintiffs have submitted an affidavit by Cook. Cook indicates that she and her sister discussed at length with Doucette their travel plans, discussed their ages, and informed Doucette that Gartland had heart problems in the past and expressed to Doucette concern for how that might affect Gartland' s travel plans. (Cook Affidavit, December 6, 2000, ¶ 6.) Cook states that during the course of their meeting, Doucette recommended Trafalgar Tours, not only because it offered a better value for the money, but also because it was a fully escorted tour which would be the easiest type of trip for Cook and Gartland. (Cook Affidavit, December 6, 2000, ¶¶ 7, 9.) In fact, Cook avers that Doucette indicated that the "Free and Easy" tours would be more difficult since they were conducted without a tour guide, and did not indicate that any "Leisurely Paced" tour would be easier, rather suggesting that the escorted tour would be the easiest way to go. (Cook Affidavit, December 6, 2000, ¶¶ 10, 11.) Cook states that the "European Whirl" tour was described as an easier trip for her and Cook for various reasons which include it being fully escorted, assisted by a trained and experienced tour guide, all land transportation would be by bus, and the tour included optional excursions and activities depending on how you were CT Page 8315 feeling and the existing weather conditions." (Cook Affidavit, December 6, 2000, ¶ 9.) Cook further contends, however, that the tour was strenuous, and had the tour been accurately described by Doucette, she and her sister would not have agreed to take the tour. (Cook Affidavit, December 6, 2000, ¶ 38.)
In her affidavit submitted in support of the motion for summary judgment, Doucette denies counseling the plaintiffs on the nature of their trip. (Doucette Affidavit, August 30, 2000, ¶ 5.) Doucette also maintains that at no time did either sister mention the state of her health, neither had no health problem or disability which could be observed, and neither made a request to notify Trafalgar about any health problem which might require special assistance. (Doucette Affidavit, August 30, 2000, ¶ 7.) While Doucette declares that she has been a travel agent for more than thirty years, and that it is not the normal practice of travel agents at Phillips Travel, or any other travel agency with which she is familiar, to inquire about health or disability because of privacy concerns, (Doucette Affidavit, August 30, 2000, ¶¶ 3, 8), she offers no other evidence to corroborate this custom. Regardless of the custom or practice, the Cook affidavit puts at issue whether the custom or practice was followed.
"Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so . . . The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury . . . The existence of a duty of care is an essential element of negligence. . . . A duty to use care may arise . . . from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Citations omitted; internal quotation marks omitted.)Soares v. George A. Tomasso Construction, 66 Conn. App. 466, 470,784 A.2d 1041 (2001).
In the present case, the affidavits are in dispute on whether health concerns were raised and discussed with Doucette at the time Cook and Gartland purchased the European Whirl. Moreover, while the existence of a duty is a question of law, whether Doucette had a duty to inquire about such issues can only be determined when the disputed facts are sorted out.
"In ruling on a motion for summary judgment, the court must decide whether there is a genuine issue of material fact. If there are issues of fact, the court may not resolve them without giving the parties a full hearing . . . Summary judgment is not appropriate in cases involving mixed questions of law and fact, such as negligence actions." (Citations CT Page 8316 omitted; internal quotation marks omitted.) Gould v. Mellick and Sexton,66 Conn. App. 542, 556, 785 A.2d 265, cert. granted 259 Conn. 902,789 A.2d 990 (2001). Since the present case does involve mixed questions of fact and law, the court finds summary judgment is not appropriate and denies the motion on count eleven against Doucette.
2. Trafalgar USA's Negligence.
In count eleven of the second amended complaint, the plaintiffs also assert the cause of action for wrongful death against Trafalgar USA. Specifically, as a result of the negligence and carelessness of Trafalgar USA and its respective agents, servants and/or employees, such as, failing to properly train or screen their respective agents, servants, and/or employees to properly conduct a guided tour and to recognize signs of serious medical problems in tour participants in order to insure timely receipt of necessary and timely medical treatment, the plaintiffs suffered damages.
In support of its motion for summary judgment, Trafalgar USA denies it has any liability to the plaintiffs. (Defendants' Memorandum, October 17, 2000, p. 26.) Trafalgar USA maintains that it had no employees, servants or agents on the trip, and they had no control over the medical attention provided to Gartland. (Defendants' Memorandum, October, 17, 2000, p. 26.) Trafalgar USA asserts that it is a New York corporation engaged in the business of marketing the tour packages operated by Trafalgar Operations (Bermuda) Ltd. (Trafalgar Ops). Trafalgar USA never owned, operated, managed or controlled Trafalgar Ops., and Trafalgar Ops. never owned, operated, managed or controlled Trafalgar USA, rather they are separate and distinct entities. (Defendants' Memorandum, October 17, 2000, p. 6.) In his affidavit in support of the motion for summary judgment, Leon Smith, vice president and general counsel of Trafalgar USA, explains that Trafalgar Ops. is a tour operator who [at the time of plaintiffs' trip] assembled the various elements of the tour, such as ground transfers, ground transportation, hotels, cruise accommodations, and guide services. (Smith Affidavit, ¶ 4.) Smith states that Trafalgar USA markets travel services to travel agencies in the United States and forwards bookings to the tour operator, Trafalgar Ops., who then confirms the tour with the various entities that arrange the actual tour services, i.e., hotel, meals, cruises, sightseeing, etc. (Smith Affidavit, ¶ 6.)
In their memorandum of opposition, the plaintiffs argue that the brochure, submitted by the defendants and identified as Exhibit A[2]
identifies an entity known as "Trafalgar Tours, Inc.," and the plaintiffs further argue that "there is no reference to the fact the tours are operated by anyone else but Trafalgar Tours." (Plaintiffs' Memorandum, CT Page 8317 December 11, 2000, p. 6.) Although the plaintiffs are correct with regard to such a reference, they fail to note that on the same page, it also states, "All tours are operated by Trafalgar Operations (Bermuda) Ltd." Moreover, while the plaintiffs submit in their memorandum of opposition that "there is no reference to the fact that the tours are operated by anyone but Trafalgar Tours," the identity of Trafalgar Ops. as the tour operator is provided in two areas of the brochure the plaintiffs reference. The brochure expressly provides in part that Trafalgar Operations (Bermuda) Ltd. "shall be responsible to the passenger for supplying the services and accommodations described in this brochure."
Although the plaintiffs allege that Trafalgar USA's lack of care and neglect in failing to properly train or screen their respective agents, servants and/or employees with regard to conducting the guided tour caused Gartland's death, they have not presented any evidence to demonstrate that Trafalgar USA even had any agents, servants, and/or employees involved with the tour. The tour guide, Jenny Vaessen, who conducted the European Whirl tour at issue, has submitted an affidavit in support of the motion for summary judgment which states, that since February 1995, she has been an employee of Trafalgar Operations (Bermuda) Ltd.[3] The plaintiffs have not provided any evidence to dispute this assertion. On the facts presented, the record is clear that the plaintiffs have sued the wrong entity.
The court finds that Trafalgar USA has demonstrated that there is no genuine issue of fact in dispute that it is a separate entity from the tour operator having no agents, servant and/or employees involved with the guided tour. Accordingly, the court grants the motion for summary judgment dismissing count eleven against Trafalgar USA.
E. Negligent Infliction of Emotional Distress
In count twelve of the second amended complaint, the plaintiffs assert a cause of action against both Doucette and Trafalgar USA for negligent infliction of emotional distress. The plaintiffs allege that in their failures to act, and in acting negligently, Doucette and Trafalgar USA inflicted severe emotional distress on the Cook, it being reasonable and foreseeable that she would suffer emotional distress from observing her sister being subjected to extreme risk of serious injury and physical harm by the defendants, and from seeing her sister die. Additionally, all of the allegations of negligence asserted in the wrongful death claim alleged in count eleven have been incorporated by reference and made a part of count twelve.
As discussed above, "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in CT Page 8318 the ordinary manner." (Internal quotation marks omitted.) Fogarty v.Rashaw, 193 Conn. 442, 446, 476 A.2d 582 (1984). As to Doucette, the facts surrounding her potential duty to Cook and Gartland and the alleged negligence which flowed therefrom, involves mixed questions of fact and law, and therefore, summary judgment is denied as to the wrongful death claim. For the same reasons, the court finds summary judgment is also precluded as to the claim for negligent infliction of emotional distress and hereby denies the motion for summary judgment on the twelfth count asserted against Doucette.
With regard to Trafalgar USA, the court grants the motion for summary judgment as to count twelve. The plaintiffs allege that the failures to act and the negligence set forth in count eleven, such as lack of care and neglect in failing to properly train or screen their respective agents, servants and/or employees with regard to conducting the guided tour and resulting in the wrongful death of Gartland, negligently inflicted emotional distress upon the plaintiff. As discussed above, the court finds that Trafalgar USA has demonstrated that there is no genuine issue of fact in dispute that it had no agents, servants and/or employees involved with the guided tour. Accordingly, Trafalgar USA cannot be held liable for the alleged negligence which the plaintiff attributes to causing her emotional distress, and therefore, the court grants the motion for summary judgment as to count twelve against Trafalgar USA.
With respect to the claims asserted against Trafalgar USA in counts eleven and twelve, the granting of summary judgment against the plaintiffs is without prejudice to asserting these claims against what appears to be the more appropriate defendant, Trafalgar Ops. In this regard, the court notes that although this case was commenced almost four years ago, the court's review of the file reveals that the first time Trafalgar USA raised the issue of being the wrong defendant was in its motion for summary judgment. Subsequently, in March of this year, it raised the issue in its answer and special defenses.
ADAMS, J.